[No. F046715. Fifth Dist. Aug. 2, 2005.]

TREND HOMES, INC., Petitioner, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
JERUD AZPERREN et al., Real Parties in Interest.

952

**COUNSEL**

Cox, Castle & Nicholson, Robert D. Infelise, Karleen M. O'Connor; Low, Ball & Lynch and Christine Balbo Reed for Petitioner.

John P. Dwyer for California Building Industry Association as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Law Offices of Keith C. Rickelman and Keith C. Rickelman for Real Parties in Interest.

## OPINION

**GOMES, J.**—Petitioner, a builder of single-family homes, challenges the trial court's denial of its motion to compel judicial reference of the underlying construction defect action brought against it by homebuyers. The trial court refused to enforce a clause in home purchase contracts requiring homebuyers who sue petitioner to submit the dispute to judicial reference on the ground the clause is unconscionable. In contrast to the trial court, we find the provision enforceable and grant the relief petitioner seeks.

### STATEMENT OF FACTS

Petitioner Trend Homes, Inc. (Trend), constructed single-family homes in a Fresno development. Real parties in interest own six homes within that development.[1] Real parties, along with 39 other individuals who own 26 other homes within the development, filed suit against Trend and Robert McCaffrey (who the plaintiffs allege is Trend's majority shareholder, officer and "Responsible Managing Officer") to recover damages allegedly suffered due to defective construction of their homes.[2]

The standard purchase and sale agreements between Trend and real parties contain a paragraph entitled "JUDICIAL REFERENCE" (the provision). The provision requires any civil action involving a dispute arising out of the agreement to be heard by a single judicial referee pursuant to Code of Civil Procedure sections 638 through 645.1.[3] The parties are to use their best efforts to agree on the selection of the referee, but if they are unable to do so, either party can seek to have a referee appointed under sections 638 and 640. The parties further agree the referee will decide all issues of fact and law, and issue a statement of decision.

In reliance on the provision, Trend moved to compel a reference with respect to real parties' claims, as they are the only plaintiffs who have

---

[1] Trend named the following 11 people as real parties in interest: Jerud Azperren, Theresa Azperren, Ed Barber, Linda Barber, Michael Kilgore, Pete Moreno, Christine Moreno, Christopher Seita, Gretchen Seita, Ryland Williams and Kari Williams

[2] The first amended complaint lists a total of 50 individuals as plaintiffs and 32 addresses for the homes involved. Real parties asserted in their motion below that a total of 24 homes are at issue in this case, while on appeal they assert 25 homes are involved. Trend does not dispute this later number on appeal.

[3] Subsequent statutory references are to the Code of Civil Procedure unless otherwise noted.

contracts with Trend that contain the provision. Trend represented the judicial reference would be for purposes of trial on the facts or law only, including summary judgment motions, and all of the parties would stipulate to the appointment of a special master, who would supervise the case management and settlement conference process, including the real parties' claims.

Real parties objected, arguing the provision should not be enforced because it is unconscionable and its enforcement could result in a multiplicity of actions. Real parties each submitted a declaration as part of their opposition. Nine of the 11 real parties asserted they were first time homeowners. All of the real parties declared that when they signed the paperwork to buy their homes, "the judicial reference clause which Trend is trying to enforce was never explained" to them, Trend never told them the clause was negotiable or could be stricken from the home purchase contract, and they had "no idea" they "were exposed, under this clause, to the payment of judicial reference fees in an indeterminate amount." Real parties also each stated they could not afford "this" and "probably will not go forward" if they had to pay a referee. In addition, real parties' counsel submitted a declaration in which he stated that fees for an experienced mediator can run from $250 to $600 per hour, which he believed would also apply to a judicial reference, and the reference fees for a five-day proceeding could "easily total $20,000.00 or more."

Following oral argument on the motion, the trial court adopted its tentative decision denying the motion. The trial court concluded the agreements were contracts of adhesion and the provision was unconscionable. Trend sought a writ of review, which we issued to consider Trend's contentions on the merits.

## DISCUSSION

The provision at issue here requires judicial reference of real parties' claims as provided in sections 638 through 645.1. Judicial reference involves sending a pending trial court action to a referee for hearing, determination and a report back to the court. (*Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1341 [83 Cal.Rptr.2d 340] (*Sy*); *Jovine v. FHP, Inc.* (1998) 64 Cal.App.4th 1506, 1521 [76 Cal.Rptr.2d 322].) A general reference occurs when the court, with the parties' consent, directs a referee to try all of the issues in the action. (*Sy, supra,* 70 Cal.App.4th at p. 1341; § 638.) The court appoints the referee, although the parties may chose the referee by agreement. (§ 640.) "The hearing before a referee is conducted in the same manner as it would be before a court under the rules of evidence applicable to judicial proceedings. [Citations.]" (*Sy, supra,* 70 Cal.App.4th at p. 1341; see Evid. Code, § 300.) In a general reference, "the referee must prepare a statement of decision which stands as the decision of the court and

is reviewable in the same manner as if the court had rendered it. [Citations.]" (*Sy*, *supra*, 70 Cal.App.4th at p. 1341; see §§ 644, 645.) Thus, the primary effect of the provision is to require trial by a referee, as opposed to the court or a jury.

■ Here, the trial court refused to enforce the provision on the ground it is unconscionable. The validity and enforceability of a judicial reference provision in a home purchase contract must be determined on a case-by-case basis. (*Greenbriar Homes Communities, Inc. v. Superior Court* (2004) 117 Cal.App.4th 337, 345 [11 Cal.Rptr.3d 371] (*Greenbriar*); *Woodside Homes of California, Inc. v. Superior Court* (2003) 107 Cal.App.4th 723, 736 [132 Cal.Rptr.2d 35] (*Woodside*); *Pardee Construction Co. v. Superior Court* (2002) 100 Cal.App.4th 1081, 1086 [123 Cal.Rptr.2d 288] (*Pardee*).) Accordingly, appellate courts have reached different conclusions regarding the enforceability of judicial reference provisions in home purchase contracts due to unconscionability, with Division 1 of the Fourth District finding such a provision unenforceable in *Pardee*, while Division 2 of the Fourth District and the Third District both have found such a provision enforceable in *Woodside* and *Greenbriar* respectively. Naturally, real parties contend we should follow *Pardee*, while Trend contends *Woodside* and *Greenbriar* control. Since the provision's enforceability depends on the facts before us, we look to each of these cases for guidance and conclude, based on this record, that the provision is not unconscionable and therefore must be enforced.

■ "Although the 'doctrine of unconscionability' was judicially created [citation], Civil Code section 1670.5 now provides a statutory basis for refusing to enforce a contract which the court finds 'as a matter of law . . . to have been unconscionable at the time it was made. . . .' The crucial term, 'unconscionable,' is not defined, but the law has clearly established that the term has both a procedural and a substantive element. The former takes into consideration the parties' relative bargaining strength and the extent to which a provision is 'hidden' or unexpected, while the substantive element requires terms that 'shock the conscience' or at the least may be described as 'harsh or oppressive.' [Citation.] Both elements must be present, but 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.]" (*Woodside*, *supra*, 107 Cal.App.4th at p. 727.)

■ As further explained in *Woodside*, "[i]t has been held that the party who prepared and submitted a contract containing unexpected or harsh terms has the burden of showing that the other party had notice of them [citation], but also that the party asserting unconscionability as a defense has the burden of establishing that condition. [Citation.]" (*Woodside*, *supra*, 107 Cal.App.4th at pp. 727–728.)

The provision at issue here appears in standardized sale agreements. The provision, paragraph 12 of the agreement, is entirely capitalized. It appears on page eight of the nine-page agreement, and reads in full:

"12. Judicial Reference.

"(A) The parties agree that in any civil action or proceeding involving a dispute arising out of or relating to this agreement, the action or proceeding shall be heard by a judicial reference as provided in California Code of Civil Procedure Sections 638 through 645.1. Disputes arising out of this agreement include, without limitation, the design, planning, engineering, testing, surveying, and construction of improvements to the property; and the disposition of buyer's purchase money deposits.

"(B) The parties agree to the appointment of a single referee and shall use their best efforts to agree on the selection of the referee. If the parties are unable to agree upon a referee within ten (10) calendar days of a written request to do so by either party, either party may thereafter seek to have a referee appointed under California Code of Civil Procedure sections 638 and 640.

"(C) The parties agree that the selected or appointed referee shall have the power to decide all issues in the action or proceeding, whether of fact or of law, and shall report a statement of decision thereon.

"(D) By initialing the space below, **each party waives any and all rights to a trial by jury for all civil actions or proceedings involving a dispute arising out of or relating to this agreement.**

"**Buyer's Initials (___) Seller's Initials (___)**" (Unnecessary capitalization omitted; further quotations of paragraph 12 in this opinion will also omit unnecessary capitalization, boldface in original.)

The issue here is whether the provision is both procedurally and substantively unconscionable. We will discuss each element in turn.

*Procedural Unconscionability*

As explained above, the procedural element focuses "on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power." (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071 [130 Cal.Rptr.2d 892, 63 P.3d 979] (*Little*), quoting *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).) The oppression component arises from the inequality of the

parties' bargaining power and an absence of real negotiation or a meaningful choice on the weaker party's part, while the surprise component comes into play when "the terms to which the party supposedly agreed [are] hidden in a prolix printed form drafted by the party seeking to enforce them. [Citations.]" (*Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1329–1330 [83 Cal.Rptr.2d 348].) The procedural element "generally takes the form of a contract of adhesion, ' "which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." ' ([*Armendariz, supra*] at p. 113.)" (*Little, supra,* 29 Cal.4th at p. 1071.) A contract of adhesion is " 'a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.]" (*Armendariz, supra,* 24 Cal.4th at p. 113.) Procedural unconscionability, however, may be present even if a contract is not adhesive. (*Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1410 [7 Cal.Rptr.3d 418].)

Here, the evidence does not support the conclusion the provision is procedurally unconscionable. First, the record does not support the trial court's finding that the agreements are adhesive. Real parties offered no evidence that they attempted to negotiate the provision and were rebuffed, or they had no meaningful choice but to agree to the provision. The only evidence real parties presented on this issue was their statements that they were never told the provision was negotiable or could be stricken. This does not establish, however, that Trend would not have stricken the provision had real parties objected. Notably, the seller was also required to initial the judicial reference provision, which supports the conclusion that the clause was negotiable.

In asserting the agreements are adhesive, real parties compare their situation to that of the homeowners in *Pardee*. Although the *Pardee* court noted there was no "specific evidence of adhesion[,]" it nevertheless concluded the contracts were adhesive because the builder acknowledged that all 800 homes in the development contained a judicial reference provision which no purchaser had stricken, which showed the plaintiffs had little choice but to sign the agreements as presented; as potential buyers of the entry-level homes, the plaintiffs were unlikely to have significant economic bargaining power; and the plaintiffs could not go elsewhere to buy a home because a home is unique. (*Pardee, supra,* 100 Cal.App.4th at p. 1087.)

In contrast here, Trend did not concede that no buyer had stricken the provision, and there is no evidence the provision was included in every purchase agreement within the development or that Trend denied any buyer's

request to strike the provision.[4] While most of the real parties were first time homebuyers, they offered no evidence that they lacked the education, experience, or sophistication necessary to understand the contracts. (See, e.g., *Woodside, supra,* 107 Cal.App.4th at p. 729, fn. 7, 730 [court refused to conclude purchasers of homes lacked education, experience or sophistication necessary to understand home purchase contracts merely from the price of the homes or the buyers' ethnicity].) Real parties also did not state that they had insufficient time to read the provision, were pressured to sign it without reading it carefully, or were not afforded the opportunity to consult with anyone else, such as an attorney, before signing the agreement.

In addition, there was no evidence concerning the availability of similarly priced housing in the area. (*Woodside, supra,* 107 Cal.App.4th at p. 729 [noting lack of such evidence in concluding judicial reference provision was not procedurally unconscionable].) Real parties contend their agreements are adhesive even if they could have bought a home elsewhere, citing *Villa Milano Homeowners Assn. v. Il Davorge* (2000) 84 Cal.App.4th 819, 826–827 [102 Cal.Rptr.2d 1], in which the court found a declaration of covenants, conditions and restrictions, which contained a binding arbitration clause covering construction and design defect claims, to be a contract of adhesion because the declaration was recorded before the homebuyers purchased their homes, thereby requiring them to purchase subject to the declaration or not purchase at all. In contrast here, real parties entered into the agreements at the time they purchased their homes, which gave them the opportunity to negotiate with respect to any provision contained in them.

There also is no element of surprise, since the provision is clearly written, entirely capitalized, and easily understood. Although the provision is on the eighth page of the nine-page agreement, it could not be overlooked, since both the buyer and seller placed their initials immediately below the provision. This necessarily made real parties "aware of the existence of [the judicial reference] provision" because they had to initial the paragraph separately. (*Wheeler v. St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 361 [133 Cal.Rptr. 775] (*Wheeler*).)

Real parties contend the provision should have been explained to them, citing *Wheeler*, in which the court stated that when a contract is one of adhesion, "conspicuousness and clarity of language alone may not be enough to satisfy the requirement of awareness. Where a contractual provision would defeat the 'strong' expectation of the weaker party, it may also be necessary to call his attention to the language of the provision. [Citation.] And if the language of such provision is too complicated or subtle for an ordinary

---

[4] In fact, real parties assert that the judicial reference provision was only included in sales contracts for homes built at the end of construction of the development.

layman to understand, he should also be given a reasonable explanation of its implications. [Citations.]" (*Wheeler, supra,* 63 Cal.App.3d at pp. 359–360.) Applying these principles, the *Wheeler* court concluded hospital staff should have pointed out and explained the implications of an arbitration clause incorporated into its admission form to a patient who signed the form on his admission to the hospital. (*Id.* at pp. 360–362.)

We do not agree that the provision is too complicated or subtle for the ordinary person to understand so that it required Trend to explain the provision. The provision clearly states that in the event of a civil action involving a dispute arising out of the agreement, the action will be heard by a judicial reference, cites the pertinent Code of Civil Procedure sections that describe judicial reference, explains that only one referee will be appointed and what occurs if the parties cannot agree on the referee, and states that the referee will have the power to decide all issues in the action. Most importantly, the provision clearly states in bold print above the parties' initials that "each party waives any and all rights to a trial by jury for all civil actions or proceedings involving a dispute arising out of or relating to this agreement." Thus, the most important aspect of judicial reference—that it does not involve a jury—was clearly and conspicuously set forth. (See *Woodside, supra,* 107 Cal.App.4th at pp. 729–730.) Moreover, a home purchase does not involve the same concerns the *Wheeler* court had about hospital admissions, which compelled it to find the arbitration provision should have been explained—while home buying may be stressful, it is not a traumatic experience like being admitted to the hospital, and no one is directing a home buyer to purchase a particular home like a doctor directs a patient to a particular hospital. (See *Wheeler, supra,* 63 Cal.App.3d at pp. 360–361.)

■ Since there is no evidence of oppression and surprise, real parties have failed to show the provision is procedurally unconscionable. Nevertheless, even if we assume an imbalance of bargaining power, that Trend prepared the contracts as the stronger party to its own advantage, and Trend would not have stricken the judicial reference provision if real parties had asked, real parties have shown only a low level of procedural unconscionability. This is because the elements of surprise or misrepresentation are not present. (See *Woodside, supra,* 107 Cal.App.4th at p. 730.) Accordingly, in order to prevail, real parties must establish a high level of substantive unconscionability. (*Ibid.*)

*Substantive Unconscionability*

■ Even if the provision is procedurally unconscionable, it certainly is not substantively unconscionable. Its terms are not so one-sided as to "shock

the conscience," nor are they harsh or oppressive. The provision does not limit the amount or type of relief real parties can obtain, and any claims Trend may have against real parties are also subject to the provision. (See *Greenbriar, supra,* 117 Cal.App.4th at p. 345 [holding judicial reference clause in a real estate purchase contract was not substantively unconscionable where it did not limit the amount or type of relief the buyers could obtain]; *Woodside, supra,* 107 Cal.App.4th at p. 730 [same].) As explained in *Greenbriar,* "[b]y means of judicial reference, the provision attempted to ensure the parties would have their rights enforced and arguments resolved in as efficient and fair a manner available to them, consistent with the rules of procedure and evidence that apply to a trial." (*Greenbriar, supra,* 117 Cal.App.4th at p. 345.)

■ We recognize the provision does not mention who is responsible for paying the referee's fees, a fact the *Pardee* court relied upon in finding the judicial reference provision in that case procedurally unconscionable. (See *Pardee, supra,* 100 Cal.App.4th at p. 1090.) Real parties contend this silence renders the provision both procedurally and substantively unconscionable. Our Supreme Court has held, however, that an arbitration agreement's silence on the issue of costs does not render the agreement unenforceable. (*Little, supra,* 29 Cal.4th at pp. 1081–1085; *Armendariz, supra,* 24 Cal.4th at p. 113.) In both *Little* and *Armendariz,* the court concluded that in the context of mandatory employment arbitration, silence about costs in an arbitration agreement covering statutory employment claims is not grounds for denying a motion to compel arbitration of those claims. (*Little, supra,* 29 Cal.4th at p. 1085; *Armendariz, supra,* 24 Cal.4th at p. 113.) We see no reason not to apply this holding in the context of judicial reference. (See *Woodside, supra,* 107 Cal.App.4th at pp. 726–727 [in which the court utilized the approach taken by cases dealing with arbitration agreements in evaluating the enforceability of judicial reference provision because judicial reference is substantially similar to nonjudicial arbitration].) Accordingly, the fact that a judicial reference provision is silent regarding the reference costs does not render that provision unconscionable or unenforceable.

Real parties nevertheless complain the provision is substantively unconscionable because they could be held responsible for payment of all the judicial reference fees. In both *Woodside* and *Greenbriar,* the courts concluded it was not unconscionable for the homebuyers to shoulder half the costs of judicial reference, as provided in their home purchase agreements. (*Greenbriar, supra,* 117 Cal.App.4th at pp. 345–346; *Woodside, supra,* 107 Cal.App.4th at pp. 732–733.)

■ In this case, because the provision does not mention who is responsible for paying the referee's fees, if the parties cannot now agree on how to apportion the fees, they may request the court to resolve the matter. (§ 645.1, subd. (a).) The court may then, after making a determination of the parties' ability to pay, order payment of referee's fees "in any manner determined by the court to be fair and reasonable, including an apportionment of the fees among the parties." (§ 645.1, subd. (b).) The court determines ability to pay by considering whether a party has established an economic inability to pay a pro rata share of the referee's fees, taking into account, as pertinent here, the estimated cost of the referral and the impact of the proposed fees on the party's ability to proceed with the litigation. (§§ 639, subd. (d)(6), 645.1, subd. (b).) We fail to see how apportioning the fees in a fair and reasonable manner, considering the parties' ability to pay, renders the provision harsh or one-sided. If the economic disparity between Trend and real parties is as great as they represent, and real parties do not have the ability to pay the fees, the court will likely require Trend to pay most, if not all, of the fees.

■ Real parties' actual concern appears to be that, even if the court apportions payment of the fees entirely to Trend, real parties could ultimately be responsible for paying the fees if they do not prevail in the action and the court awards the referee's fees as costs to Trend. We recognize that referee's fees are recoverable by the prevailing party as costs. (*DeBlase v. Superior Court* (1996) 41 Cal.App.4th 1279, 1285 [49 Cal.Rptr.2d 229]; *Most Worshipful Lodge v. Sons etc. Lodge* (1956) 140 Cal.App.2d 833, 835 [295 P.2d 912].) The provision, however, cannot be found unconscionable merely because real parties' exposure includes possible responsibility for payment of the referee's fees should they lose; there is no one-sidedness, as Trend is also exposed to such a possibility.

Further, as the *Woodside* court explained: "We also note that the contracts at least raised the possibility that the referee would choose to apportion expenses primarily to the losing party. It could well be argued that construction defect cases are relatively straightforward in many respects, at least as between the buyer and the builder. Either the roof leaks, or it does not; if it does, the builder is very likely to be responsible. Unlike, for example, an automobile accident case, 'leaky roof' and 'cracked wall' cases do not involve the vagaries of memory and debatable issues of whether 'A' had time to swerve, or 'B' should have braked. To this extent a home buyer who brings a complaint in good faith can feel reasonably confident of prevailing, and thus also making a case for an apportionment of expenses primarily to the builder." (*Woodside, supra*, 107 Cal.App.4th at p. 734, fn. 14.) This holds true with respect to real parties' concerns with respect to any cost award after litigation in this case is completed.

Real parties also contend the provision is substantively unconscionable because the referee's and reporter's fees "are far in excess of any fees that would be paid in a superior court action." It is real parties' burden, however, to "demonstrate at the least that the fees they are likely to pay are in fact greater than those which would accrue in litigation before the court." (*Woodside, supra,* 107 Cal.App.4th at p. 733.) No such showing was made. In fact, they have shown the opposite since they declare that they cannot afford to pay the fees, thus making it likely the court will require Trend to pay them. While real parties' attorney estimated the reference fees for a five-day proceeding could total $20,000, no attempt was made to establish the costs of a jury trial, such as the likely length of a jury trial or the additional attorney fees, if any, which litigation before a jury would likely generate. (*Ibid.*) In sum, like the homebuyers in *Woodside,* real parties "failed to produce any evidence that the decision to agree to judicial reference was not economically sound from their point of view." (*Id.* at p. 734.)

With respect to jury trial waiver, although real parties acknowledge they may waive their right to a jury trial, they contend Trend has failed to meet its burden of showing how they would benefit from such a waiver. In *Pardee,* the court found no evidence in the record that the buyers gained anything in return for the waiver because it could not say the waiver would in fact result in any economies of time or expense, and nothing in the record suggested the buyers otherwise gained anything. (*Pardee, supra,* 100 Cal.App.4th at pp. 1091–1092.) In contrast, the *Woodside* court concluded "based on the public policy favoring alternative dispute resolution (see *Armendariz, supra,* 24 Cal.4th 83, and *Keating v. Superior Court* [1982] 31 Cal.3d 584 [183 Cal.Rptr. 360, 645 P.2d 1192]), we should assume that such economies exist unless proven otherwise. We also think it obvious that Buyers *did* get something for their jury waiver—Woodside's matching waiver." (*Woodside, supra,* 107 Cal.App.4th at p. 734.) We agree with *Woodside* and likewise conclude real parties' waiver of their right to a jury trial does not render their agreements substantively unconscionable.

Real parties also contend the provision should not be enforced because section 1298.7 forbids the use of binding arbitration for the litigation of construction defect claims.[5] The *Pardee* court noted that while section 1298.7 was not controlling because it applies to arbitration, not judicial reference, it "expressed a legislative statement of public policy favoring a trial with full

---

[5] Section 1298.7 provides: "In the event an arbitration provision is included in a contract or agreement covered by this title [Sections 1298–1298.8 involving real estate contract arbitration], it shall not preclude or limit any right of action for bodily injury or wrongful death, or any right of action to which Section 337.1 [patent construction defect] or 337.15 [latent construction defect] is applicable."

procedural and constitutional rights over alternative dispute resolution in the context of construction defect litigation," and therefore was "informative in these circumstances involving judicial reference provisions in real estate sales documentation." (*Pardee, supra,* 100 Cal.App.4th at pp. 1092–1093.) The *Woodside* court, however, concluded section 1298.7 does not apply to judicial reference, since that section invalidates only arbitration agreements. (*Woodside, supra,* 107 Cal.App.4th at p. 726 & fn. 2.)

We note that when the parties agree to judicial reference, as opposed to arbitration, they retain nearly all of their procedural and constitutional rights, since the rules of evidence apply to the proceeding, which is conducted like a trial, and the parties retain appellate rights. The only right the parties agree to give up is the right to a jury trial. Thus, judicial reference does not present the same danger expressed by the *Pardee* court—loss of a trial with full procedural and constitutional rights—that exists with respect to arbitration. At best, the *Pardee* court's statement provides additional support for invalidating an otherwise unconscionable judicial reference provision. Having concluded the judicial reference provision at issue here is not unconscionable, section 1298.7 has no impact in this case.

 Finally, real parties contend the provision should not be enforced because there is no evidence the subcontractors have agreed to participate in judicial reference and there is a possibility of inconsistent verdicts since the majority of homeowners are not subject to judicial reference and their case will be tried to a jury. Real parties have not cited any authority that supports the proposition that the risk of multiple actions proceeding in different forums renders the agreements unconscionable or invalidates the parties' agreement to have all disputes decided by judicial reference. As the *Greenbriar* court explained in rejecting a similar argument: "Had the Legislature intended to allow judicial reference agreements to be invalidated on the basis of other pending or multiple actions, it could have adopted a statute so stating. Without such statutory authorization, however, both the trial court and we lack authority to invalidate an otherwise valid contractual agreement. '[W]e do not rewrite any provision of any contract [or any statute] . . . for any purpose.' (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 968 [103 Cal.Rptr.2d 672, 16 P.3d 94].)" (*Greenbriar, supra,* 117 Cal.App.4th at p. 348.)

 In sum, real parties have not met their burden of establishing the provision is unconscionable. We therefore find the provision for judicial reference in this case is enforceable.

## DISPOSITION

The petition is granted. The clerk of this court is ordered to serve a peremptory writ of mandate directing the respondent court to set aside and vacate its ruling of September 16, 2004, denying petitioner's motion to compel judicial reference. Our stay of the underlying action will be vacated upon finality of this opinion. The parties shall bear their own costs.

Vartabedian, Acting P. J., and Buckley, J., concurred.