179 Cal.App.4th 1283 (2009)
TARRANT BELL PROPERTY, LLC, et al., Petitioners,
v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
REYNALDO ABAYA et al., Real Parties in Interest.
SPANISH RANCH I, L.P., Petitioner,
v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
REYNALDO ABAYA et al., Real Parties in Interest.
Nos. A125496, A125714.
Court of Appeals of California, First District, Division Four.
December 2, 2009.
*1286 Hart King & Coldren, Robert S. Coldren, Robert G. Williamson, Jr., Daniel T. Rudderow; Carlson Calladine & Peterson and Asim Kishore Desai for Petitioner Tarrant Bell Property, LLC.
Gray  Duffy, John J. Duffy and Frank J. Ozello, Jr., for Petitioner Spanish Ranch I, L.P.
No appearance for Respondent.
Endeman, Lincoln, Turek & Heater, James Allen, Henry E. Heater and Linda B. Reich for Real Parties in Interest.

OPINION
SEPULVEDA, J. 
It is undisputed that a trial court may, in its discretion, refuse to compel arbitration between contracting parties where there are other individuals suing over the same matter and separate arbitration and court actions risk conflicting rulings on a common issue of law or fact. (Code Civ. Proc., § 1281.2, subd. (c).) The question presented here is whether the trial court is vested with comparable discretion when asked to compel a different form of alternative dispute resolution, trial by a private referee. (Code Civ. Proc., § 638 et seq.) We conclude that the answer is yes.
There are several forms of alternative dispute resolution that contracting parties may use to settle disputes arising under their contract, including arbitration (Code Civ. Proc., § 1280 et seq.) and trial by a referee (Code Civ. Proc., § 638 et seq.). Statutory law provides that an agreement to submit a controversy to arbitration "shall" be enforced unless specified circumstances exist. (Code Civ. Proc., § 1281.2.) Among those circumstances: the court may refuse to enforce the arbitration agreement where "[a] party to the arbitration agreement is also a party to a pending court action ... with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." (Code Civ. Proc., § 1281.2, subd. (c).)
The reference statute has a different structure. The reference statute does not have a general provision mandating enforcement followed by exceptions to enforcement, as does the arbitration statute. Instead, the reference statute *1287 has a general provision making enforcement discretionary. A referee "may" be appointed "if the court finds a reference agreement exists between the parties." (Code Civ. Proc., § 638.)
The question here is whether the trial court may refuse to enforce a reference agreement, as it may an arbitration agreement, where there is a possibility of conflicting rulings on a common issue of law or fact. We conclude that the court has the discretion to refuse to enforce a reference agreement under these circumstances, or related considerations of judicial economy, and that no abuse of that discretion has been shown in this case.

I. FACTS
Spanish Ranch I Mobile Home Park (the Park) is a 50-acre Hayward facility with 462 sites. In October 2008, 120 current and former residents of the Park sued the Park owners upon allegations that the owners failed to properly maintain the common areas and facilities within the Park, and otherwise subjected the residents to substandard living conditions. Defendant Monterey Coast, L.P., is the current owner, and defendants Tarrant Bell Property, LLC, and Spanish Ranch I, L.P., are former owners.
In December 2008, defendants moved to compel arbitration or, in the alternative, judicial reference. (Code Civ. Proc., §§ 638, 1281.2.) Many of the plaintiffs had signed Park leases containing an alternative dispute resolution (ADR) provision. The parties dispute the exact number of plaintiffs subject to an ADR lease provision. Defendants put the number at 100 while plaintiffs say 81. The exact number is not important here. It is sufficient to note that many, but not all, of the plaintiffs agreed to submit tenant disputes to ADR.[1]
There were several standard form leases used over the years at the Park, with slight variation in the ADR provisions, but those differences are not material. In substance, the leases state that it is agreed that any tenancy dispute (with major exceptions for actions by the Park owner) shall be submitted to arbitration conducted under the provisions of Code of Civil Procedure section 1280 et seq. "`Dispute'" is defined to include claims regarding "maintenance, condition, nature, or extent of the facilities, improvements, services, and utilities provided to the space, park or common areas of *1288 the park."[2] The leases further state: "If these arbitration provisions are held unenforceable for any reason it is agreed that all arbitrable issues in any judicial proceeding will be subject to and referred on motion by any party or the court for hearing and decision by a referee (a retired judge or other person appointed by the court) as provided by California law, including Code of Civil Procedure section 638, et seq." Costs for the arbitration or reference "shall be advanced equally" between the tenant and Park owner.
Plaintiffs opposed the motion to compel arbitration or reference on a number of grounds. Plaintiffs argued that the ADR provision is unenforceable as an invalid waiver of rights protected under the Mobilehome Residency Law and landlord-tenant law. (Civ. Code, §§ 798.77, 798.87, subd. (a), 1953, subd. (a).) Plaintiffs also asserted that the ADR provision is unconscionable because it exploits the weak bargaining position of mobilehome residents and requires ADR of the residents' disputes while exempting unlawful detainer and other Park owner actions from ADR. Finally, plaintiffs urged the court to refuse enforcement of the ADR provision because its enforcement risked conflicting rulings on common issues of law and fact by sending the claims of some Park residents to arbitration or reference, while others remained in the superior court for resolution.
In March 2009, the court denied defendants' motion to compel arbitration on two grounds: (1) the Mobilehome Residency Law precludes waiver of a resident's right to bring a civil action for a park's improper maintenance of the common facilities (Civ. Code, §§ 798.77, 798.87, subd. (a)); and (2) there is the risk of inconsistent rulings on common issues (Code Civ. Proc., § 1281.2, subd. (c)). It will be recalled that the lease provided alternative forms of ADR: arbitration preferentially, but reference if the "arbitration provisions are held unenforceable for any reason." The court, having held the arbitration provisions unenforceable, was asked by defendants to compel reference.
The court received supplemental briefing on defendants' alternative request for reference and, in May 2009, denied that request as well. The court found that sending some of the plaintiffs to a referee while others remained in the superior court risked inconsistent rulings. The court also found that splitting the action would defeat the purposes of the reference statute by duplicating efforts and increasing costs: "Ordering two groups of plaintiffs to try their cases in separate but parallel proceedings would not reduce the burdens on this court or the parties, result in any cost savings, streamline the proceedings, or achieve efficiencies of any kind. The parties would be required to conduct the same discovery, litigate and ultimately try the same issues in *1289 separate but parallel forums. A general reference would thus result in a duplication of effort, increased costs, and potentially, delays in resolution. Moreover, it would not reduce any burden on this Court, which would almost certainly have to hear, and decide, all of the same issues."
Defendants appealed the trial court's March 2009 order denying their motion to compel arbitration, and that appeal is pending. (Code Civ. Proc., § 1294, subd. (a).) Defendants also filed petitions for a writ of mandate to vacate the court's May 2009 order denying their alternative motion to compel reference. We now turn to consideration of the merits of defendants' petitions challenging the order denying reference.

II. DISCUSSION
(1) Parties may consent, either before or after a lawsuit commences, to appointment of a referee to hear and decide their dispute in whole or part. (Code Civ. Proc., § 638 (hereafter, section 638).) Section 638 provides: "A referee may be appointed upon the agreement of the parties filed with the clerk, or judge, or entered in the minutes, or upon the motion of a party to a written contract or lease that provides that any controversy arising therefrom shall be heard by a referee if the court finds a reference agreement exists between the parties: [¶] (a) To hear and determine any or all of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision. [¶] (b) To ascertain a fact necessary to enable the court to determine an action or proceeding." Where a consensual reference is made, the court "shall appoint as referee" the person agreed upon by the parties and the referee's fees "shall be paid as agreed by the parties." (Code Civ. Proc., §§ 640, 645.1, subd. (a).)
We are here concerned with a predispute agreement in a lease that provides for a general reference with all issues to be decided by a referee. "In a general reference, the referee prepares a statement of decision that stands as the decision of the court and is reviewable as if the court had rendered it. The primary effect of such a reference is to require trial by a referee and not by a court or jury." (Treo @ Kettner Homeowners Assn. v. Superior Court (2008) 166 Cal.App.4th 1055, 1061 [83 Cal.Rptr.3d 318].)

A. A trial court has discretion to refuse enforcement of a predispute reference agreement

(2) Section 638, by its plain terms, vests the trial court with discretion when the court is asked by a party to appoint a referee pursuant to a predispute reference agreement: "A referee may be appointed ... upon the motion of a party to a written contract or lease that provides that any *1290 controversy arising therefrom shall be heard by a referee ...." (Italics added.) (3) Our role as judges is to effectuate legislative intent, and statutory language is "generally the most reliable indication of legislative intent." (Miklosy v. Regents of University of California (2008) 44 Cal.4th 876, 888 [80 Cal.Rptr.3d 690, 188 P.3d 629].) "If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls." (Ibid.) (4) The word "may" usually denotes permissive action, in contrast to "shall," which is ordinarily used in laws to express what is mandatory. (Hogya v. Superior Court (1977) 75 Cal.App.3d 122, 133 [142 Cal.Rptr. 325].) The Legislature is well aware of the distinction between the words "shall" and "may." (Ibid.) In interpreting the meaning of "may" in section 638, it is also significant that the Legislature used both "shall" and "may" in legislating the use of trials by referees by, for example, stating that the court "may" appoint a referee pursuant to the parties' predispute agreement while providing that the selection and payment of the referee "shall" be as agreed by the parties. (Code Civ. Proc., §§ 638, 640, 645.1, subd. (a).) "When the Legislature has, as here, used both `shall' and `may' in close proximity in a particular context, we may fairly infer the Legislature intended mandatory and discretionary meanings, respectively." (In re Richard E. (1978) 21 Cal.3d 349, 353-354 [146 Cal.Rptr. 604, 579 P.2d 495].)
Defendants argue that the trial court has no discretion to deny a motion to compel reference once a party requests reference and demonstrates the existence of a reference agreement. The permissive language of section 638, according to defendants, relates to the moving party's desire for reference and not the court's authority. It is the parties who may or may not request a reference. The court itself has no discretion in the matter and must order the reference if elected by the parties, defendants contend. Defendants' interpretation is contrary to the plain language of section 638. The statute provides, in relevant part: "A referee may be appointed ... upon the motion of a party to a written contract or lease that provides that any controversy arising therefrom shall be heard by a referee if the court finds a reference agreement exists between the parties ...." (§ 638.) The statute does not say that a party may move for trial by referee but that the court may appoint a referee upon a party's motion. The permissive language relates to the court's conduct, not the parties' conduct. Respected commentators have so interpreted section 638: "The statutes authorizing appointment of referees make the appointment discretionary, not mandatory." (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2008) ¶ 6:152, p. 6-45 (rev. # 1, 2006).)
The legislative history of section 638 confirms that the Legislature meant to empower the trial court with discretionary authority to refuse enforcement of a reference agreement. While the statutory language is clear in expressing *1291 this legislative intent, we may also "look to legislative history to confirm our plain-meaning construction of statutory language." (Hughes v. Pair (2009) 46 Cal.4th 1035, 1046 [95 Cal.Rptr.3d 636, 209 P.3d 963].) Here, legislative intent on this point is unmistakable.
Prior to 1982, section 638 authorized a court to order trial by referee upon the present agreement of parties to pending litigation. (Legis. Counsel's Dig., Assem. Bill No. 3657 (1981-1982 Reg. Sess.) 6 Stats. 1982, Summary Dig., p. 152.) Section 638 was amended in 1982 to authorize a court to order trial by referee upon a predispute reference agreement when one of the parties moved to enforce the agreement. (Legis. Counsel's Dig., Assem. Bill No. 3657, supra, 6 Stats. 1982, Summary Dig., p. 152; Stats. 1982, ch. 440, p. 1810.) The State Bar of California sponsored the bill to amend section 638 and urged its adoption, arguing "that this bill is needed because there is no present procedure for compelling a reference if one party unilaterally decides not to abide by a prior agreement that any dispute may be submitted to a referee." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3657 (1981-1982 Reg. Sess.) Apr. 28, 1982, p. 1.) The bill's sponsor argued that "court congestion" makes reference an "attractive remedy." (Ibid.)
Importantly, the bill as originally introduced required the court to enforce predispute reference agreements and was amended to give the court discretion to decide whether to enforce such agreements. The original version of the bill contained a separate paragraph on predispute reference agreements, stating: "Parties to a written contract or lease may provide that any controversy arising therefrom will be heard by a reference and any party to such an agreement may move the court to compel the reference. If the court finds a reference agreement existing between the parties, the reference shall be ordered." (Assem. Bill No. 3657 (1981-1982 Reg. Sess.) Mar. 18, 1982, italics added.) An Assembly committee report noted that then existing law provided that a court "may" order a reference upon agreement of the parties and that the proposed bill "would require a court to compel a reference if there is a pre-dispute agreement to refer." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3657 (1981-1982 Reg. Sess.) Apr. 28, 1982, p. 1.) Committee staff commented: "Should not the court have the discretion to decide that, despite the existence of the pre-dispute agreement, the issues would be more properly or efficiently decided by the judge? Therefore, should not this bill simply create a presumption that a court should compel a reference when parties have contractually agreed to one, thereby permitting the court to determine that such a reference would be inappropriate?" (Id. at pp. 1-2.) The legislators embraced this recommendation. The bill was amended to delete the mandatory language of the bill as originally introduced, and to use permissive language. (Assem. Amend. to Assem. Bill No. 3657 (1981-1982 Reg. Sess.) May 10, 1982.) The amendment deleted *1292 the separate paragraph (quoted above) relating to predispute reference agreements and incorporated predispute agreements into the existing discretionary provision governing postdispute reference agreements. (Ibid.) Section 638 was thus amended to read as it does now, in substantial form: "A reference may be ordered upon the agreement of the parties filed with the clerk, or judge, or entered in the minutes or in the docket, or upon the motion of a party to a written contract or lease which provides that any controversy arising therefrom shall be heard by a reference if the court finds a reference agreement exists between the parties." (Assem. Amend. to Assem. Bill No. 3657, supra, May 10, 1982, original italics.) The legislative history thus confirms that the Legislature specifically intended to vest courts with discretion to deny predispute reference agreements, just as the court has discretion to deny postdispute reference agreements.

B. A trial court may consider the risk of inconsistent rulings and judicial economy in deciding whether to enforce a reference agreement

(5) Defendants next argue that any discretion the court has to deny appointment of a referee is not unbounded. We agree. A trial court's discretion is never unbounded. "`In its discretion,' ... is not the equivalent of `if it wants to' or `if it feels like it.'" (Horsford v. Board of Trustees of California State University (2005) 132 Cal.App.4th 359, 394 [33 Cal.Rptr.3d 644].) The scope of "judicial discretion must be measured against the general rules of law and, in the case of a statutory grant of discretion, against the specific law that grants the discretion." (Id. at p. 393; accord, Westside Community for Independent Living, Inc. v. Obledo (1983) 33 Cal.3d 348, 355 [188 Cal.Rptr. 873, 657 P.2d 365].) Discretion should be exercised in a manner that best effectuates the purposes of the law granting the discretion. (Horsford, supra, at p. 394.)
The question thus becomes whether the grounds given by the court for its refusal to appoint a referee are consistent with the substantive law of section 638, read in light of the purposes and policy of the statute. (See City of Sacramento v. Drew (1989) 207 Cal.App.3d 1287, 1298 [255 Cal.Rptr. 704] [applying methodology to determine if court exceeded scope of statutory discretion].) The court denied appointment of a referee upon finding that sending some of the plaintiffs to a referee while others remained in the superior court risked inconsistent rulings. The court also found that splitting the action would defeat the purposes of the reference statute by duplicating efforts and increasing costs: "Ordering two groups of plaintiffs to try their cases in separate but parallel proceedings would not reduce the burdens on this court or the parties, result in any cost savings, streamline the proceedings, or achieve efficiencies of any kind. The parties would be required to conduct the same discovery, litigate and ultimately try the same issues in *1293 separate but parallel forums. A general reference would thus result in a duplication of effort, increased costs, and potentially, delays in resolution. Moreover, it would not reduce any burden on this Court, which would almost certainly have to hear, and decide, all of the same issues."
(6) Defendants contend that the trial court exceeded the scope of its discretion in denying reference. Defendants assert: "Where there is an otherwise valid contractual agreement for judicial reference, the trial court has no discretion to deny a judicial reference based on claims of judicial economy, multiplicity of actions or risks of inconsistent rulings." We disagree. As noted above, section 638 was amended to allow enforcement of predispute agreements as a means to ease court congestion, and courts were effectively given discretion to refuse enforcement of such agreements where the case would more efficiently be handled in the superior court. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3657 (1981-1982 Reg. Sess.) Apr. 28, 1982, p. 1.)
A report of the Assembly Committee on the Judiciary asked: "Should not the court have the discretion to decide that, despite the existence of the pre-dispute agreement, the issues would be more properly or efficiently decided by the judge? Therefore, should not this bill simply create a presumption that a court should compel a reference when parties have contractually agreed to one, thereby permitting the court to determine that such a reference would be inappropriate?" (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3657 (1981-1982 Reg. Sess.) Apr. 28, 1982, pp. 1-2.) The bill was soon amended to provide court discretion, which suggests that the Legislature intended to grant a trial judge authority to deny reference where the issues "would be more properly or efficiently decided by the judge." (Ibid.; Assem. Amend. to Assem. Bill No. 3657 (1981-1982 Reg. Sess.) May 10, 1982.)
The considerations weighed by the trial court herethe risk of inconsistent rulings on a common issue of law or fact, the duplication of efforts, increased costs, potential delays in resolution, and an unmitigated burden on the superior courtwere relevant considerations given the purpose and policy of section 638. Defendants deny the relevancy of these considerations in arguing that "the trial court has no discretion to deny a judicial reference based on claims of judicial economy, multiplicity of actions or risks of inconsistent rulings." The argument ignores the legislative history and objectives of section 638 and relies exclusively upon two cases where section 638 was not fully considered. Defendants' reliance upon Greenbriar Homes Communities, Inc. v. Superior Court (2004) 117 Cal.App.4th 337 [11 Cal.Rptr.3d 371] (Greenbriar) and Trend Homes, Inc. v. Superior Court (2005) 131 Cal.App.4th 950 [32 Cal.Rptr.3d 411] (Trend Homes) is thus misplaced.
*1294 In Greenbriar, the Third District Court of Appeal granted a petition for writ of mandate against a trial court's order denying a real estate developer's motion to compel judicial reference under predispute agreements with 43 of 69 plaintiff homeowners alleging defective construction of their homes. (Greenbriar, supra, 117 Cal.App.4th at pp. 337, 340-341, 348.) The trial court had denied reference because "`it would cause multiplicity of lawsuits.'" (Id. at pp. 341-342.) In defending the ruling in the appellate court, the plaintiff homeowners apparently did not rely upon the discretionary language of section 638 and its legislative objectives to show that multiplicity of lawsuits is a proper basis for denying reference. Instead, the Greenbriar plaintiffs argued that court discretion to deny enforcement of the reference agreements "is derived from analogous statutory authority given courts under Code of Civil Procedure section 1281.2 to refuse to enforce arbitration agreements pending a court action between a party to the arbitration agreement and a third party." (117 Cal.App.4th at p. 346, italics omitted.) The Third District promptly, and rightly, rejected that argument noting that "Code of Civil Procedure section 1281.2 is a specific statute that creates a special rule, which invalidates only arbitration agreements." (Id. at p. 347, original italics.) The appellate court reasoned: "Had the Legislature intended to allow judicial reference agreements to be invalidated on the basis of other pending or multiple actions, it could have adopted a statute so stating. Without such statutory authorization, however, both the trial court and we lack authority to invalidate an otherwise valid contractual agreement." (Id. at p. 348.) The weakness in this reasoning is the focus on Code of Civil Procedure section 1281.2, relied upon by the Greenbriar plaintiffs, and the failure to fully explore section 638. It is section 638 that provides statutory authorization to deny enforcement of a reference agreement on the basis of multiple actions where, as here, multiplicity of actions risks inconsistent rulings, duplication of efforts, increased costs, and delays in resolution.
Trend Homes also failed to explore the language and objectives of section 638. (Trend Homes, supra, 131 Cal.App.4th 950.) In Trend Homes, the Fifth District followed Greenbriar, supra, 117 Cal.App.4th 337 in granting a petition for writ of mandate against a trial court's order denying a real estate developer's motion to compel judicial reference under predispute agreements with 11 of 50 plaintiff homeowners alleging defective construction of their homes. (Trend Homes, at p. 954.) The trial court had concluded that the agreements were unconscionable, and thus unenforceable. (Id. at p. 955.) The appellate court rejected the unconscionability finding and also rejected the plaintiff homeowners' alternative argument that the possibility of inconsistent rulings from the referee and superior court in the multiple actions warranted denying reference. (Id. at p. 964.) The court followed Greenbriar and made no assessment of section 638. (Trend Homes, at p. 964.) It is section 638 that vests the trial court with authority to exercise its discretion to deny *1295 reference where multiple actions arising from the same transaction or operative facts risk inconsistent rulings, duplication of efforts, increased costs, and delays in resolution. The failure of Greenbriar and Trend to fully consider section 638 renders those cases unpersuasive, and we decline to follow them.
(7) We therefore conclude that a trial court may refuse to enforce a reference agreement where there is a possibility of conflicting rulings on a common issue of law or fact or other circumstances related to considerations of judicial economy, consistent with the purposes and policies of section 638. We do not suggest that refusal is always warranted where there are multiple actions triable by the superior court judge and a private referee. The trial court must make a case-by-case assessment.
Here, the trial court's assessment was reasonable, and defendants have failed to demonstrate any abuse of discretion. The trial court found that sending some of the plaintiff Park residents to a referee while others remained in the superior court risked inconsistent rulings on common issues of law or fact and would require the parties "to conduct the same discovery, litigate and ultimately try the same issues in separate but parallel forums," resulting in "duplication of effort, increased costs, and potentially, delays in resolution." The court rejected defendants' argument that there was a lack of commonality, and thus no risk of inconsistent rulings, because each Park resident's damages were unique. The court rightly noted that common issues do exist, including the primary issue of liability for the alleged failure to maintain Park premises by, for example, failing to provide adequate sewage, water, and electrical services to all residents. The court also rejected defendants' argument that reference would reduce, not increase costs, by reducing the number of plaintiff witnesses appearing in the superior court. The argument overlooks the likelihood that plaintiffs will call many Park residents to establish the pervasiveness of alleged substandard living conditions in the Parkwhether the residents are parties to the superior court action or not. Moreover, the possible savings in time and cost from the appearance of fewer Park residents in the superior court if reference is granted are slight compared to the time and cost incurred by the appearance of many other witnesses, including expert witnesses, in parallel proceedings. The trial court did not abuse its discretion in denying reference.
(8) As a final matter, we note that plaintiffs also argue that the reference agreements are unconscionable, and thus unenforceable, and also void as an invalid waiver of rights protected under landlord-tenant law. (Civ. Code, § 1953, subd. (a).) We need not reach these issues because we conclude that the trial court acted within its discretion in denying enforcement of the reference agreements on the basis of multiplicity of actions and the attendant risk of inconsistent rulings and duplication of efforts established in this case.

*1296 III. DISPOSITION
The petitions are denied. The parties shall bear their own costs.
Ruvolo, P. J., and Rivera, J., concurred.
NOTES
[1] It is not clear from the record whether the tenants without ADR provisions in their leases were asked to agree to ADR and refused, or were never asked to agree to ADR at the time they signed their leases.
[2] The lease arbitration and reference clauses are typed in all capital letters. We do not follow that capitalization scheme when quoting those clauses here.