[No. F059492. Fifth Dist. Feb. 7, 2011.]

NANCY ANDERS et al., Petitioners, v.
THE SUPERIOR COURT OF STANISLAUS COUNTY, Respondent;
MERITAGE HOMES OF CALIFORNIA, INC., Real Party in Interest.

[CERTIFIED FOR PARTIAL PUBLICATION*]

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I. and III.

582

COUNSEL

Milstein, Adelman & Kreger, Fred M. Adelman, Mayo L. Makarczyk, Suzanne Patron and Lee Jackson for Petitioners.

No appearance for Respondent.

Green & Hall, Edward R. Huguenin and James L. Bothwell for Real Party in Interest.

OPINION

HILL, P. J.—In response to a motion by real party in interest (real party), the trial court issued an order that included a requirement that petitioners comply with the statutory procedures ordinarily imposed on homeowners as a prerequisite to filing an action against a builder to remedy construction defects. Petitioners seek a writ of mandate directing the trial court to vacate its order and instead enter an order denying real party's motion in its entirety. We conclude the trial court misinterpreted the governing statute and grant the petition.

## *FACTUAL AND PROCEDURAL BACKGROUND*

Civil Code sections 895 through 945.5[1] (Sen. Bill No. 800 (2001–2002 Reg. Sess.) (Senate Bill No. 800)) set out a nonadversarial prelitigation procedure by which the purchaser of a home who believes there are defects in the construction of the home for which the builder is liable must give the builder notice of the alleged defects and an opportunity to investigate and repair them prior to initiating a court action seeking remedies. Under the statutory scheme, the builder has the option of contracting for an alternative nonadversarial prelitigation procedure at the time of the initial sale of the home.

Petitioners are the owners of 54 homes built by real party. They filed a complaint seeking remedies for alleged construction defects in their homes. Real party filed a motion seeking to compel petitioners whose homes were sold pursuant to sales contracts containing alternative prelitigation procedures to comply with those procedures, and to stay the litigation until the procedures have been followed and real party has been afforded an opportunity to repair any defects. Petitioners opposed the motion. After hearing, the trial court granted real party's motion in part and denied it in part. The court found the alternative procedures set out in the contracts to be unconscionable and unenforceable. It denied real party's request to compel petitioners to comply with the alternative procedures, but, finding real party made only a qualified election to follow its alternative procedures, the trial court required petitioners to comply with the statutory prelitigation procedures. It stayed the litigation pending completion of the process. Petitioners petitioned for a writ of mandate or prohibition to overturn the portion of the court's order requiring them to comply with the statutory procedures. They contend Senate Bill No. 800 provides that, if the builder's alternative procedures are found to be unenforceable, the builder may not enforce the statutory prelitigation procedures and the petitioner may file suit without compliance with those procedures. We issued an order to show cause and received additional briefing in order to consider this issue of first impression.

## *DISCUSSION*

I. *Writ Review*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

[*]See footnote, *ante*, page 579.

## II. Statutory Interpretation

### A. Statutory provisions

In 2002, the Legislature enacted sections 895 through 945.5, to "specify the rights and requirements of a homeowner to bring an action for construction defects, including applicable standards for home construction, the statute of limitations, the burden of proof, the damages recoverable, a detailed prelitigation procedure, and the obligations of the homeowner." (Legis. Counsel's Dig., Sen. Bill No. 800 (2001–2002 Reg. Sess.).) Chapter 2 of the legislation sets out the building standards for the violation of which a builder may be held liable to the homeowner. (§§ 896, 897.) Chapter 3 of the legislation specifies the obligations of the builder, including an obligation to provide a specified limited warranty. (§§ 900–907.) Chapter 4 of the legislation prescribes prelitigation procedures a home buyer must initiate prior to bringing a civil action against the builder seeking recovery for alleged construction defects. (§§ 910–938.) Chapter 5 of the legislation sets out the applicable statute of limitations, the damages that may be recovered and affirmative defenses that may be asserted. (§§ 941–945.5.)

█ Chapter 4 of the legislation sets out a nonadversarial prelitigation procedure a homeowner is required to follow prior to filing suit to recover on claims of construction defects. (§§ 910, 914.) The homeowner must give written notice to the builder of the claim that the builder violated chapter 2 of the legislation, describing the nature and location of the claimed violations. (§ 910.) The builder must acknowledge receipt of the notice within 14 days; if the builder elects to inspect and test the claimed defects, it must make its initial inspection within 14 days after acknowledgement of receipt of the notice, at a mutually convenient time. (§ 916.) Within 30 days after inspection and testing, the builder may make a written offer to repair the defects, explaining which defects are to be repaired and the method of repair, identifying any contractors to be used to make the repairs, and setting a reasonable completion date. (§ 917.) Within 30 days, the homeowner may authorize the repairs as proposed, or request that the builder identify other contractors that may be used to implement the repairs; after the builder identifies other contractors, the homeowner "shall authorize the builder or one of the alternative contractors to perform the repair." (§ 918.) █ The repair must be commenced within specified time periods, done "with the utmost diligence," and "completed as soon as reasonably possible." (§ 921, subd. (b).)

The builder's offer to repair the defects must be accompanied by an offer to mediate the dispute if the homeowner chooses. (§ 919.) As an alternative to an offer of repair, the builder may make the homeowner a cash offer. (§ 929.)

If the builder fails to acknowledge receipt of the claim, fails to make an offer to repair, fails to complete the repair within the time specified in the repair plan, or fails to "strictly comply with this chapter within the times specified, the claimant is released from the requirements of this chapter and may proceed with the filing of an action." (§ 920; see *id.*, §§ 915, 925, 930.) A claimant may also file an action for a violation of the legislation's chapter 2 standards alleging an inadequate repair. (§ 927.)

The request for an extraordinary writ in this case arises out of statutory provisions permitting a builder to contract for alternative nonadversarial prelitigation procedures for resolving claims of construction defects. Section 914, subdivision (a), provides:

"This chapter establishes a nonadversarial procedure, including the remedies available under this chapter which, if the procedure does not resolve the dispute between the parties, may result in a subsequent action to enforce the other chapters of this title. A builder may attempt to commence nonadversarial contractual provisions other than the nonadversarial procedures and remedies set forth in this chapter, but may not, in addition to its own nonadversarial contractual provisions, require adherence to the nonadversarial procedures and remedies set forth in this chapter, regardless of whether the builder's own alternative nonadversarial contractual provisions are successful in resolving the dispute or ultimately deemed enforceable.

"At the time the sales agreement is executed, the builder shall notify the homeowner whether the builder intends to engage in the nonadversarial procedure of this section or attempt to enforce alternative nonadversarial contractual provisions. If the builder elects to use alternative nonadversarial contractual provisions in lieu of this chapter, the election is binding, regardless of whether the builder's alternative nonadversarial contractual provisions are successful in resolving the ultimate dispute or are ultimately deemed enforceable." (§ 914, subd. (a).)

In its motion in the trial court, real party contended petitioners fall into three categories: owners of 28 homes who purchased their homes directly from real party pursuant to purchase contracts and warranty documents that required them to follow real party's alternative procedures for claims of construction defects (original purchasers); owners of 24 homes who were successors in interest to others who purchased directly from real party pursuant to purchase documents that required them to follow real party's alternative procedures (subsequent purchasers); and owners of two homes whose contractual documents required them to follow the statutory procedures for claims of construction defects (Sen. Bill No. 800 purchasers). Real party sought an order compelling the original and subsequent purchasers to

comply with its contractual alternative prelitigation procedures, and compelling the Senate Bill No. 800 purchasers to comply with the statutory prelitigation procedures. The trial court denied the request to compel compliance with the alternative procedures, finding them unconscionable and unenforceable. Despite the provisions of section 914, subdivision (a), it ordered all three groups to comply with the statutory procedures. Petitioners challenge the order requiring them to comply with the statutory procedures.

### B. *Original and subsequent purchasers*

Real party's motion asserted the sales contracts and home warranties required the original purchasers and the subsequent purchasers to follow alternative nonadversarial procedures set out in those documents in lieu of the procedures found in chapter 4 of the legislation. In their writ petition, petitioners contend that, having attempted to enforce those alternative provisions, real party was barred by the provisions of section 914, subdivision (a), from requiring petitioners to comply with the statutory procedures. To determine whether petitioners are entitled to relief from the trial court's order, we must interpret and apply the language of section 914, subdivision (a).

"Well-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law. [Citation.] We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context. [Citations.] These canons generally preclude judicial construction that renders part of the statute 'meaningless or inoperative.' [Citation.]" (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715–716 [3 Cal.Rptr.3d 623, 74 P.3d 726].) "If the language is clear and unambiguous there is no need for construction . . . ." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) When the meaning of the language used is ambiguous, the court may consider the legislative history of the statute. (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663 [3 Cal.Rptr.3d 390, 74 P.3d 166].) "Statutory construction is a question of law that we review de novo." (*Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1159 [42 Cal.Rptr.3d 191].)

The original sales contracts for the homes of the original and subsequent purchasers included the following provisions:[2]

"(a) <u>Defects; Notice and Opportunity to Cure</u>: If after Buyer's Close of Escrow for the purchase of the Property, Buyer discovers a material structural

---

[2] In most of the contracts, the provisions appear in section 14; in a few contracts, however, they appear in section 13.

or other defect in the Property or any improvement located thereon . . . that Buyer feels may be the responsibility of Seller ('Defect'), Buyer shall notify Seller in writing in accordance with the terms and conditions of the HOME BUILDER'S LIMITED WARRANTY . . . . Buyer shall not pursue any other remedies available to it under this Section 14 until Seller has had the notice and opportunity to cure the Defect described above . . . .

"(b) Arbitration of Disputes: . . .

"(c) Civil Code sections 895–945.5 Elections. To resolve any future disputes, Buyer and Seller agree to rely upon normal customer service procedures, those alternative dispute provisions set forth or referenced in this Agreement and the Home Builder's Limited Warranty at section VII, and, if such disputes remain unresolved, binding contractual arbitration provisions as set forth above and in the Home Builder's Limited Warranty at section VIII. Pursuant to Civil Code section 914, Seller elects the preceding methods and will not compel Buyer to those nonadversarial, prelitigation procedures described [in] Civil Code section 914, et seq. . . .

"(d) Recordation of Dispute Resolution and Other Provisions. Buyer agrees that Seller may also record against the Property procedures and election set forth or permitted in Civil Code section 912(f) and related sections. Buyer is informed that the procedures in this Agreement and this section impact the legal rights of the Buyer and any successors who own the Property . . . ." (Some capitalization omitted.)

■ Section 914, subdivision (a), permits the builder to elect to engage in its own nonadversarial contractual procedure in lieu of the statutory procedure. It requires the builder to notify the home buyer, at the time the sales agreement is executed, which set of procedures it elects to use. Real party's sales agreements contained an election to use real party's alternative procedures, as set out in the purchase contracts and home builder's warranties. Section 914, subdivision (a), made that election "binding, regardless of whether the builder's alternative nonadversarial contractual provisions . . . are ultimately deemed enforceable."

■ Real party attempted to enforce its alternative contractual procedures by bringing its motion to compel petitioners to comply with those procedures prior to proceeding with their litigation, but the trial court found its alternative procedures were unenforceable. Section 914, subdivision (a), provides that, if a builder attempts to commence its alternative contractual procedures, it "may not, in addition . . . , require adherence" to the statutory procedures, "regardless of whether the builder's own alternative nonadversarial contractual provisions are successful in resolving the dispute or ultimately deemed

enforceable." The statute refers to the builder's "attempt" to use or enforce alternative prelitigation procedures as the event that precludes it from requiring the homeowner to adhere to the statutory procedures. The builder need not complete the contractual prelitigation process or be successful in resolving the dispute in order to be barred from pursuing the statutory procedure. If the builder attempts to enforce its alternative procedures and those procedures are determined to be unenforceable, the builder may not require the homeowners to comply with the statutory procedures.

■ The second paragraph of section 914, subdivision (a), requires the builder to notify the buyer at the time the sales agreement is executed of its election either to use the prelitigation procedure set out in the statutes or to use its own contractual procedure. It specifies that the builder's election is binding, "regardless of whether the builder's alternative nonadversarial contractual provisions are successful in resolving the ultimate dispute or are ultimately deemed enforceable." The two paragraphs of section 914, subdivision (a), read together, indicate that, if the builder elects or attempts to use its own prelitigation procedures in lieu of the statutory procedures, it is bound by that decision, "regardless of whether" its provisions are "ultimately deemed enforceable." "Regardless of whether" the builder's alternative procedures are "ultimately deemed enforceable" means it does not matter whether those procedures are enforceable or not; either way, the builder is bound by its election and cannot enforce the statutory provisions.

In its briefs in opposition to the writ petition, real party first ignored the language "regardless of whether the builder's . . . provisions are deemed enforceable"; it then argued the language means "even if a builder's alternative pre-litigation procedures are 'ultimately deemed enforceable,' " the builder may not require the homeowners to comply with the statutory procedures in addition to its own. It seems to contend the builder is only precluded from enforcing the statutory procedures if its contractual procedures are enforceable and actually used. But the language of the statute is not "even if" the builder's procedures are enforceable; it is "regardless of whether" the alternative procedures are enforceable. (§ 914, subd. (a).) Thus, while the provision precluding use of the statutory procedures would apply "even if" the alternative procedures were deemed enforceable, it would also apply "even if" they were deemed unenforceable.

■ The intent manifested in the plain language of the statute is that a builder may attempt to use one set of procedures or the other, but not both. If the builder elects or attempts to use its alternative contractual procedures, it may not thereafter require the homeowners to comply with the statutory prelitigation procedures, even if its attempt at enforcement of its own procedures fails because the alternative procedures are found to be unenforceable.

This interpretation is reinforced by section 915, which provides: "If a builder fails to acknowledge receipt of the notice of a claim within the time specified, elects not to go through the process set forth in this chapter, or fails to request an inspection within the time specified, or *at the conclusion or cessation of an alternative nonadversarial proceeding*, this chapter does not apply and the homeowner is released from the requirements of this chapter and may proceed with the filing of an action." (§ 915, italics added.) Thus, if the alternative proceeding ceases because the procedures are found to be unenforceable, the homeowner is released from the requirements of the statutory procedure and may file suit. Further, section 927, which extends the statute of limitations on the homeowner's lawsuit if the statute would otherwise run during the prelitigation process, provides: "If the builder elects to attempt to enforce its own nonadversarial procedure in lieu of the procedure set forth in this chapter, the time period for filing a complaint or other legal remedies for violation of any provision of this part is extended from the time of the original claim by the claimant to 100 days after either the completion of the builder's alternative nonadversarial procedure, or *100 days after the builder's alternative nonadversarial procedure is deemed unenforceable*, whichever is later." (§ 927, italics added.)

The legislative history[3] of Senate Bill No. 800 elucidates the purposes behind the nonadversarial prelitigation procedures of chapter 4 of the legislation. "The bill establishes a mandatory process prior to the filing of a construction defect action. The major component of this process is the builder's absolute right to attempt a repair prior to a homeowner filing an action in court. Builders, insurers, and other business groups are hopeful that this right to repair will reduce litigation." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 28, 2002, p. 5.) "The bill also responds to concerns expressed by builders, subcontractors, and insurers over the costs of construction defect litigation [and] their impact on housing costs in the state." (*Id.* at p. 4.) Thus, one of the major purposes of the legislation is to promote prelitigation repairs of construction defects in order to avoid the costs of litigation and the resulting increased costs of construction. The provisions establishing a timetable for the repairs also protect homeowners by preventing inordinate delay in their pursuit of a remedy.

■ The statutes do not require the builder to repair any claimed defects; they simply give it the right to do so. The builder may waive that right, for example, by not responding to the homeowner's notice of the defects, or by

---

[3] We grant petitioners' request for judicial notice of a Senate Judiciary Committee analysis of Senate Bill No. 800. (Evid. Code, §§ 459, 452, subd. (c); *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1172, fn. 5 [72 Cal.Rptr.3d 624, 177 P.3d 232].)

not offering to repair after investigating the homeowner's claims. Our interpretation of section 914 preserves that right; a builder who elects to use alternative prelitigation procedures in lieu of those set out in the statute has the right to attempt repairs, so long as it does so pursuant to procedures that are fair and enforceable. If, however, the builder imposes procedures that are found to be unenforceable, it forfeits its absolute right to attempt repairs. It may still offer to repair any defects, but the homeowner is not bound to accept the offer or to permit the builder to attempt the repairs prior to litigation. The builder thus has an incentive to ensure its alternative procedures are proper and enforceable, and the homeowner's protection against unnecessary delay is preserved.

Real party contends, and the trial court found, that real party's election to follow its own procedures was a "qualified" election. Real party bases its argument on language found in the home builder's limited warranty: "Your only remedy in the event of a construction defect in or to the home or the common elements or to the real property . . . is the coverage provided to you under this limited warranty. Notwithstanding the foregoing, nothing in this limited warranty shall diminish any rights, obligations, or remedies that you or we may have under California Civil Code Sections 895 through 945.5 or under any procedures adopted in place of California Civil Code sections 910 through 938." (Capitalization omitted.) We interpret this language to express an intent that the warranty be construed so as to avoid denying the homeowner any rights guaranteed by Senate Bill No. 800. We do not interpret it to mean that, if the warranty provisions are held to be unenforceable, then the statutory prelitigation procedures must be followed in their entirety. Such an interpretation would be contrary to the provisions of the sales agreements that "[p]ursuant to Civil Code section 914, Seller elects the preceding methods," that is, those set out in the warranty, "and will not compel Buyer to those nonadversarial, prelitigation procedures described [in] Civil Code section 914, et seq." Such an interpretation would also eviscerate the provisions of section 914 which make the builder's election to engage in its own prelitigation procedures binding and preclude it from attempting to use both its own and the statutory procedures. It would permit any builder to avoid the limitations of section 914 entirely by simply including in its contractual documents language similar to that of real party's warranty.

■ At the hearing, the trial court seemed to be swayed by the idea that requiring petitioners to comply with the statutory procedures would not harm them and might be beneficial. In various forms, it asked petitioners' counsel three times, "What's wrong with requiring [petitioners] to comply with SB800 . . . ?" Petitioners' counsel first answered that it was "absolutely statutorily precluded"; when the court posed the question the third time, he conceded, "There's nothing wrong with having the homeowners go along with SB800," although he qualified his response by asserting that real party

had already failed to strictly comply with the statutory procedures and therefore petitioners had a right to proceed with their litigation. Whether the trial court believes it would be beneficial to require petitioners to permit real party to attempt to repair the claimed construction defects prior to pursuing the litigation is irrelevant. Imposing such a requirement is directly contrary to the express provisions of section 914, subdivision (a). "Absent constitutional constraints, when the Legislature has established policy, it is not for the courts to differ." (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 851 [5 Cal.Rptr.2d 500, 863 P.2d 745], fn. omitted.) The legislative history of Senate Bill No. 800 indicates it was "the product of extended negotiations between various interested parties" and " 'reflect[ed] extensive and serious negotiations between builder groups, insurers and the Consumer Attorneys of California, with the substantial assistance of key legislative leaders over the past year, leading to consensus on ways to resolve these issues.' " (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001–2002 Reg. Sess.) as amended Aug. 28, 2002, pp. 1, 3.) The Legislature had input from various interested groups; it presumably considered their conflicting interests and enacted statutes that reflected its policy choices. It is not our place or the place of the trial court to substitute our notions of good policy for those of the Legislature.

Real party attempted to enforce the alternative contractual prelitigation procedures against the subsequent purchasers, as well as the original purchasers. The sales contracts contained real party's election to use its own alternative procedures, advised the buyers that these procedures impacted the legal rights of the buyers and their successors, and included the buyers' agreement that real party "may record against the Property procedures and election set forth or permitted in Civil Code section 912(f) and related sections." The contracts also contained the buyers' agreement "to provide any subsequent purchaser of the Property copies of those documents . . . provided in conjunction with the original sale, as required by Civil Code section 912(h)," including the sales contract and the warranty. Real party recorded against the properties "Notice of Certain SB 800 and Related Procedures," which gave "notice of the existence of certain procedures that impact the legal rights of Lot homeowners." The warranty provided it would "transfer to new owners of the home for the remainder of the warranty period"; it also defined "homeowner" to include the successors of the first owner. (Capitalization omitted.) Pursuant to these provisions, real party moved to compel the subsequent owners to comply with the alternative contractual prelitigation procedures.

Because real party elected to use its own alternative procedures and to make those procedures applicable to subsequent purchasers of the homes, and because it attempted to enforce them against the subsequent purchasers through its motion to compel, the provisions of section 914, subdivision (a),

apply to the subsequent purchasers in the same manner as to the original purchasers. Real party's election to use the alternative procedures was binding, and, after attempting to enforce them against the subsequent purchasers, real party could not require those purchasers to comply with the statutory prelitigation procedures.

 Real party attempted to compel the original and subsequent purchasers to comply with the alternative prelitigation procedures set out in the purchase contracts and warranties. That attempt was unsuccessful because the trial court found the procedures to be unconscionable and unenforceable. Real party's election to use the alternative procedures was binding. Pursuant to section 914, subdivision (a), real party could not thereafter enforce the statutory prelitigation procedures. The trial court's order compelling the original and subsequent purchasers to comply with the statutory prelitigation procedures, despite its prior attempt to enforce its own alternative procedures, is contrary to the statute.

### C. Senate Bill No. 800 purchasers

The owners of two of the homes in issue purchased their homes pursuant to purchase agreements that provided for application of the statutory procedures to any claims of construction defects.[4] Real party did not attempt to enforce any alternative prelitigation procedures against these petitioners. The purchase documents contained an election to use the statutory procedures. Real party's motion to compel sought to compel these purchasers to comply with the statutory procedures. As to these Senate Bill No. 800 purchasers, petitioners have not shown the trial court's order was in error.

### III. Other Issues*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

Petitioners are entitled to appropriate relief. (Code Civ. Proc., §§ 1085, 1086.) Let a peremptory writ of mandate issue directing the respondent court to vacate its order compelling the original and subsequent purchaser petitioners

---

[4] The moving papers identified the addresses of these homes and their initial owners; the first amended complaint identified petitioners by their names and addresses. From this information, we deduce that the petitioners in this category are William and Lisa Poole, and Tony and Crystal Favorito.

*See footnote, *ante,* page 579.

to comply with the statutory provisions for prelitigation procedures found in sections 910 through 938, and to enter a new order denying the motion as to those petitioners. The parties shall bear their own costs in this proceeding.

Cornell, J. and Detjen, J., concurred.