Filed 3/24/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE McCAFFREY GROUP, INC., | F066080 |
| Petitioner, | (Super. Ct. No. 11CECG01451) |
| v. | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO, | **OPINION** |
| Respondent, | |
| JESUS CITAL, et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDING: petition for writ of mandate. Alan M. Simpson and Kristi Culver Kapetan, Judges.

Jackson, DeMarco, Tidus & Peckenpaugh, Edward A. Galloway and Paige H. Gosney for Petitioner.

No appearance for Respondent.

Milstein Adelman, Fred M. Adelman, Mayo L. Makarczyk, and Jonathan P. Staffeldt for Real Parties in Interest.

-ooOoo-

In this case, we are asked to determine the enforceability of provisions in home purchase contracts that require the homeowners to submit their construction defect claims

to nonadversarial prelitigation procedures before proceeding with a lawsuit.  Those procedures include providing the builder with notice of the claimed defect, giving the builder the right to inspect and correct it, and, if the homeowner is still unsatisfied, engaging in non-binding mediation.  In contrast to the trial court, we find the provisions enforceable and grant the relief the petitioner seeks.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner The McCaffrey Group, Inc. (McCaffrey) constructed single-family homes in a Fresno development.  Real parties in interest own 24 homes within the development.  Nineteen of those homes are owned by 32 individuals who purchased their homes directly from McCaffrey (the original purchasers).  Nine of the 19 homes were sold before 2003 using the 2001 version of McCaffrey's "Combined Purchase and Sale Agreement and Joint Escrow Instructions" and "Homeowner Warranty;" the other ten homes were sold on or after January 1, 2003 using the 2003 version of McCaffrey's "Combined Purchase and Sale Agreement and Joint Escrow Instructions" and "Homeowner Warranty and Claims Procedure."  Five of the 24 homes are owned by eight individuals who purchased their homes from someone other than McCaffrey after January 1, 2003 (the subsequent purchasers).

The distinction in purchase dates is significant because in 2002, the Legislature added Title 7 to Part 2 of the Civil Code, (Civ. Code, § 895 et seq.; Sen. Bill No. 800),[1] which we will refer to as the Right to Repair Act or the Act.[2]  The Act applies to new residential units where the seller signed the purchase agreement on or after January 1, 2003.  It establishes a nonadversarial prelitigation procedure that a homeowner must

---

[1] All further statutory references are to the Civil Code, unless otherwise stated.

[2] As noted in *Baeza v. Superior Court* (2011) 201 Cal.App.4th 1214, 1222, fn. 5 (*Baeza*), the Act was not given an official name, but has been referred to in other cases as the "Right to Repair Act" or the "Fix-it law."

2.

initiate before bringing an action against the builder for alleged construction defects (the statutory procedure). The statutory procedure requires the homeowner to provide the builder with notice of the defects, and an opportunity to investigate and repair them. (§§ 910–938.) The builder, however, has the option of contracting for its own alternative nonadversarial prelitigation procedure (the contractual procedure) when the home is first sold. (§ 914, subd. (a).)

McCaffrey did so in this case, notifying the real parties who purchased their homes on or after January 1, 2003, through a provision in their home warranties, that the "following contractual provisions for the nonadversarial resolution of claims are intended to, and do hereby, replace the statutory nonadversarial procedures contained in Civil Code Sections 910-938. Homeowner hereby acknowledges the existence of such provisions and procedures and that the same impact the legal rights of Homeowner." Both the real parties and McCaffrey initialed this provision.

McCaffrey's contractual procedure, set forth in both the 2001 and 2003 versions of the sale agreements and home warranties, contains the same two-step process for addressing disputes over alleged construction defects. The first step requires the homeowner to provide McCaffrey with written notice of the claimed defects and an opportunity to inspect and repair them.[3]

_____

[3] Paragraph 11 of the 2003 sale agreement provides:
"11. <u>ALTERNATIVE DISPUTE RESOLUTION AND JUDICIAL REFERENCE</u>.
"Each party agrees not to commence any lawsuit against the other party without first complying with the Alternative Dispute Resolution procedures set forth below in paragraphs (a), (b) and (c). If any party breaches this agreement not to commence any lawsuit without first complying with such Alternative Dispute Resolution procedures, the other party may then commence a lawsuit seeking to compel compliance with such agreement.
"(a) <u>Dispute Notification and Resolution Procedure</u>. Any claim, dispute or other controversy between the parties . . . arising out of or relating to this Agreement, including, but not limited to, the use, condition or operation of the Property and any improvements to the Property, including, but not limited to, the design, specifications,

3.

Once McCaffrey receives notice of the claim, it has "a reasonable period of time," not to exceed 60 days, to "meet and confer at a mutually-acceptable place in Fresno County, California, to discuss the Claim." Either at that meeting or another mutually agreed-upon time, "the parties and their authorized representatives shall have full access to the Property that is subject of the Claim for purposes of inspecting the Property[,]" and if McCaffrey "decides to take any corrective action," it must be provided full access to the Property to do so.

The second step requires the parties to submit the claim to non-binding mediation if it has not been resolved.[4] The claim must be "submitted to non-binding mediation

surveying, grading, construction, maintenance, and repair of the Property and any improvements to the Property (individually and collectively a 'Claim') shall be subject to the procedures set forth in this Paragraph 11.

"(b) <u>Claim Notice: Right to Inspect and Correct</u>. Any party with a Claim shall notify the other party or parties in writing of the Claim. Such writing shall (i) identify the claimant's name and address, (ii) state that the claimant elects to commence the procedures set forth in this section F [*sic*], and (iii) describe the nature and location of the Claim in reasonable detail (the 'Claim Notice'). Within a reasonable period of time after receipt of the Claim Notice, which period shall not exceed sixty (60) days, the party or parties receiving the Claim Notice and the party making the Claim shall meet and confer at a mutually-acceptable place in Fresno County, California, to discuss the Claim. At such meeting or at such other mutually-agreeable time, the parties and their authorized representatives shall have full access to the Property that is subject of the Claim for the purposes of inspecting the Property. If the party or parties against whom the Claim is made decides to take any corrective action, that party or parties and their representatives shall be provided full access to the Property to take such corrective action."

The only difference between the 2001 and 2003 versions is that the 2001 version states the notice need only describe the nature of the claim and the proposed remedy.

[4] The mediation provision in paragraph 11(c) provides:

"(c) <u>Nonbinding Mediation</u>. If the parties cannot resolve the Claim pursuant to the procedures described in section 4 [*sic*] above, the Claim shall be submitted to non-binding mediation pursuant to the mediation procedures adopted by JAMS or any successor entity thereto or to any other entity offering mediation services that is acceptable to the parties. The parties shall cooperate so that the mediation hearing can be held as soon as practicable. No person shall serve as a mediator in which the person has any financial or personal interest in the result of the mediation, except by the written consent of all parties.

pursuant to the mediation procedures adopted by JAMS" or any other entity offering mediation services that is acceptable to the parties. Within 10 days of the mediator's selection, or a time frame set by the mediator, each party must submit a brief memorandum setting forth its position regarding the issue to be resolved. The mediation is to be held in Fresno County, commence within ten days of submission of the memoranda, and conclude within 15 days, unless the parties mutually agree otherwise in writing. The mediator has discretion to conduct the mediation in whatever manner he or she determinates is most appropriate to settle the claim, but does not have authority to impose a settlement. Each party is to bear its own mediation expenses, except the parties

---

"Each party shall submit a brief memorandum setting forth its position with regard to the issues that need to be resolved within ten (10) days of the selection of the mediator or within such time frame established by the mediator. The mediation shall be commenced within ten (10) days following the submittal of the memoranda and shall be concluded within fifteen (15) days from the commencement of the mediation unless the parties mutually agree in writing otherwise. The mediation shall be held in Fresno County, California, or such other place as the parties agree in writing.

"The mediator shall have discretion to conduct the mediation in the manner in which the mediator believes is most appropriate for reaching a settlement of the Claim. The mediator shall be authorized to conduct joint and separate meetings with the parties and to make oral and written recommendations for settlement. The mediator shall not have the authority to impose a settlement on the parties.

"The mediation shall be subject to the provisions of Evidence Code Sections 1115 through 1128, or any successor statutes thereto, except as the parties may agree otherwise in writing or orally in accordance with the provisions of Evidence Code Section 1118.

"No persons may attend the mediation other than the parties, their representatives (including, but not limited to, counsel) and the mediator other than with the permission of the parties and the consent of the mediator. Confidential information disclosed to a mediator by the parties in the course of the mediation shall not be divulged by the mediator. All records, reports, or other documents received by the mediator while serving in such capacity shall be considered confidential. There shall be no stenographic record of the mediation session.

"Each party shall bear their own mediation expenses, provided that the mediation administrative fee and costs and the mediator's fee and costs shall be borne equally by the parties unless the parties agree otherwise in writing."

5.

are to share equally the mediation administrative fees and costs, as well as the mediator's fee and costs, unless they agree otherwise in writing.

Finally, if the mediation does not resolve the claim, either party may file a lawsuit. If a lawsuit is filed, "the Claim shall be resolved by means of a general reference made under the provisions of Code of Civil Procedure Sections 638, et seq., by a general referee appointed under the provisions of Code of Civil Procedure Section 638(a) . . . " The referee has the authority to decide all issues in the action and issue a statement of decision. The judicial reference provision sets out the rules and procedures applicable to the reference, and states that the parties retain the same appeal rights from the judgment entered on the referee's statement of decision as if judgment had been entered on a trial court judge's statement of decision. The parties agreed to bear their own attorney fees and costs.[5] The 2001 version does not mention who is to pay the referee's fees and costs,

_____

[5] The judicial reference provision appears in paragraph 12 as follows:

"12.    Judicial Reference.  If the parties cannot resolve the Claim pursuant to the procedures described in Paragraphs 11 (a), (b) and (c) above, either party may then file a lawsuit to resolve the Claim.  If a lawsuit is filed, the Claim shall be resolved by means of a general reference made under the provisions of Code of Civil Procedure Sections 638, et seq. by a general referee appointed under the provisions of Code of Civil Procedure Section 638(a), or any successor statutes ('Referee').  Either or both parties may take the steps necessary to secure the appointment of the Referee.

"The Referee shall have the authority to hear and determine any and all issues in the action or proceeding, whether of fact or law, and to issue a statement of decision thereon. **Each party waives the right to a jury trial**. The following rules and procedures shall apply in all cases unless the parties agree otherwise in writing:

"(i) The proceedings shall be heard in Fresno County, California;

"(ii) The Referee shall be a retired judge, or an attorney with at least five years' real estate experience; provided that either party may object to the appointment of a particular referee on any grounds authorized under Code of Civil Procedure Section 641 or any successor statute;

"(iii) Any dispute regarding the selection of the Referee shall be resolved by the entity providing the reference services or, if no entity is involved, by the court in which the action or proceeding is pending;

6.

while the 2003 version states that "[t]he referee's fees and costs shall be borne equally by the parties unless the parties agree otherwise in writing."

Real parties filed suit against McCaffrey in May 2011 to recover damages allegedly suffered due to defective construction of their homes. After answering the first amended complaint, McCaffrey filed a "Motion to Compel ADR" and stay the action. McCaffrey asserted the original purchasers had breached their agreements to follow the mandatory "ADR" and judicial reference procedures set forth therein; therefore, it was contractually entitled to seek a court order staying the action and compelling the original purchasers to comply with those procedures. With respect to the subsequent purchasers,

---

"(iv) The parties shall be entitled to all rights of discovery permitted by California law;

"(v) The Referee shall have the power to hear and dispose of motions in the same manner as a trial court judge;

"(vi) The Referee shall apply the rules of law, including the rules of evidence, unless expressly waived by the parties in writing;

"(vii) A stenographic record of the trial shall be made, provided that the record shall remain confidential to the extent permitted by California law;

"(viii) The Referee's statement of decision shall stand as the decision of the court as authorized under Code of Civil Procedure Section 644(a), and judgment may be entered thereon in the same manner as if the action had been tried by a court; and

"(ix) The Referee shall have the authority to rule on all post-trial motions in the same manner as a trial court judge.

"Each party retains the same appeal rights from the judgment entered on the Referee's statement of decision as if judgment had been entered on a trial court judge's statement of decision.

"The Referee's fee and costs shall be borne equally by the parties unless the parties agree otherwise in writing.

"Nothing herein shall be considered to reduce or extend any applicable statutes of limitations.

"**The parties acknowledge and agree that by entering into this Agreement, they are waiving certain rights including the right to a jury trial and the right to a trial by a trial court judge. The parties confirm this acknowledgment by placing their initials below**:

"**Buyer's Initials (_____)          Seller's Initials (_____)**"

7.

McCaffrey contended they were subject to the statutory procedures set forth in the Act; because they failed to follow those procedures, McCaffrey was statutorily entitled to seek a court order staying the action and compelling compliance with the Act. In a footnote in its memorandum of points and authorities, McCaffrey explained that while it had not attempted to enforce the "ADR" and judicial reference provisions in its homeowner agreements and "CC&Rs" against the subsequent purchasers, if the subsequent purchasers contended or conceded they were bound to such terms, it reserved the right to enforce those terms against them.

Real parties opposed the motion. They first argued the subsequent purchasers could not be compelled to comply with the statutory procedure because they are subject to the contractual procedure. Real parties asserted that because McCaffrey elected to implement a contractual procedure in lieu of the statutory procedure when the homes were first sold, the election was binding on the subsequent purchasers since the original buyers were instructed to pass notice of the election on to subsequent purchasers as covenants that run with the land.[6] Real parties contended McCaffrey's contractual procedure was unenforceable against all of them because its "'alternative procedure'" was irreconcilable with the standards set forth in Section 4 of the Act. With respect to the judicial reference provision, real parties argued it should not be enforced because it is procedurally and substantively unconscionable, would result in the deprivation of the

---

[6] Real parties attached a copy of the covenants, conditions and restrictions (CC&Rs), which they asserted McCaffrey recorded on the title for all homes located in Tract 4974 of the development. Real parties claimed that McCaffrey recorded similar CC&Rs on the title for the other tracts at issue in the action. Article 7 of the CC&Rs provides, in part, that any claim, dispute or controversy between any owner and McCaffrey relating to the CC&Rs or the use or condition of any lot, including claims made under Civil Code sections 896 or 897, shall be subject to the claims procedures set forth in Exhibit A attached thereto. Exhibit A sets forth the same prelitigation and judicial reference procedures contained in the 2003 version of the purchase and sales agreements and warranties.

8.

right to a jury trial, and would only delay the action and increase costs to the plaintiffs. Real parties asked the court to exercise its discretion and refuse to enforce the judicial reference provision pursuant to *Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538 (*Tarrant Bell*).

Five of the real parties who were original purchasers of four of the homes submitted declarations as part of the opposition.[7]  Three of the five declared this was their first home, and one declared this was her first home in California.  They decided to buy their homes for a variety of reasons, including McCaffrey's "unique payment plan," the models were "unique" and  "spacious," McCaffrey had "unique incentives such as front yard landscaping," and they loved the location.  All stated they were not real estate agents and had "zero knowledge" about purchasing real estate.

They each declared they signed a lot of documents at McCaffrey's model home office when purchasing their homes, which they were not able to review thoroughly because they felt rushed by the sales agent.  They signed, however, for various reasons, including that they "really wanted the home," they "were urged to sign quickly in order to get a home at the current price," the sales agent urged them to "sign immediately" as "the prices were going up every week[,]" and they did not think they would be able to find another home for the same price.  The declarants also stated they "had no bargaining or negotiation power" when purchasing their homes, and if they "had refused to sign any portion of the documents," they would not have been able to purchase the home.  They stated that the "implications of the various paragraphs" were not explained, the sales agent's explanations were "extremely weak," and a lot of information was presented in a short amount of time.  They were confused by the process or the documents.  Finally, they did not understand, and were not told, that by signing the documents they were

---

[7] The real parties who submitted declarations were Angelique and Jesus Cital, Hattie McKay, Philip Ramirez, and Renee Phillips.

9.

forfeiting the right to a jury trial in the event they discovered construction defects in the home.

The attorney for real parties declared that in construction defect cases, his firm's custom and practice is to file a complaint against the developer for all construction defects found in the plaintiffs' homes. Once they learn the identities of the subcontractors and manufacturers involved, they bring those parties into the lawsuit. As of January 2012, real parties had amended the complaint to add as defendants 28 manufacturers and subcontractors involved in the construction of their homes.

In reply, McCaffrey argued the statutory procedures could be enforced against the subsequent purchasers, but also accepted real parties' stipulation they are bound to McCaffrey's contractual procedures. McCaffrey asked the court to enforce the contractual procedures against the subsequent purchasers pursuant to the stipulation.

Following the May 31, 2012 oral argument on the motion before the Honorable Alan Simpson, the court adopted its tentative decision denying the motion as to the original purchasers who submitted declarations and to the subsequent purchasers. The court continued the hearing on the motion to June 21, 2012 to allow the remainder of the plaintiffs to submit declarations evidencing procedural unconscionability, if they could do so truthfully.

As to the original purchasers who submitted declarations, the trial court found the provisions unconscionable. The trial court determined those plaintiffs had made a "fairly we[a]k showing of procedural unconscionability" which was offset by a strong showing of substantive unconscionability. The court explained these plaintiffs had presented "some evidence" their agreements were contracts of adhesion, as, based on the court's recollection, the price range of the homes when purchased "approximates the price of entry level homes in the Fresno vicinity," each declarant enumerated a combination of features that made their home specifically desirable to them, and, while the contractual provisions are "clear, easily understandable and separately initialed, the only evidence

10.

before the court is the entire contract was presented in a 'take-it-or-leave-it' fashion." The court determined the contractual provisions were substantively unconscionable because they did not contain timelines like those in the Act, which require the builder to act within specified time limits and protect homeowners from inordinate delay in the pursuit of a remedy.

With respect to the subsequent purchasers, the court found that McCaffrey could not enforce the Act against them because it had opted out of the Act's prelitigation procedure when the homes originally were sold. The court determined McCaffrey's contractual provisions, not the Act, applied to the subsequent purchasers, therefore it would not compel compliance with the Act.

Real parties subsequently filed declarations from nine original purchasers, seven of whom own four of the 19 original purchaser homes, and two of whom were original purchasers of a home on which one of the owners previously submitted a declaration.[8] McCaffrey filed an opposition and objections to the declarations. McCaffrey argued that as to these eight purchasers, there was no evidence of procedural unconscionability because they had over a month to review their home purchase documents before McCaffrey accepted them, during which time they could have withdrawn their purchase offers, and the contractual provisions are not substantively unconscionable. McCaffrey made various evidentiary objections to the declarations, including that statements in them lacked foundation, were irrelevant, conclusory and argumentative, and constituted improper speculation and opinion.

On June 21, 2012, the trial court continued the hearing on the motion to July 14, 2012 to permit the plaintiffs who had not yet filed declarations evidencing procedural

_____

[8] Declarations were submitted by Wesley and Dorothy Hodson, Micah and Miko Johnson, Paul and Gloria Ruiz, Marina and Philip Ramirez, and Timothy Timmons. Philip Ramirez, however, already had submitted a declaration with the original opposition.

unconscionability to do so. Real parties subsequently filed three more declarations from three original purchasers, but only one was from a real party who had not previously submitted a declaration.[9] McCaffrey filed an opposition, arguing the court erred in giving the plaintiffs additional time to file declarations, the court should disregard two of the declarations because they were from a dismissed party and a party who already submitted a declaration, and the third declaration did not establish procedural unconscionability. McCaffrey asked the court to sever those provisions it found unconscionable and enforce the others. McCaffrey filed evidentiary objections to the three declarations.

On July 13, 2012, the case was reassigned to another judge, the Honorable Kristi Culver Kapetan, for all purposes. After being continued twice, the hearing ultimately was held on August 8, 2012. The court took the matter under advisement and subsequently issued a written ruling denying the motion as to all of the real parties. The court overruled McCaffrey's evidentiary objections. The court concluded that as to the original purchasers who submitted declarations, the agreements were contracts of adhesion and the provisions were substantively unconscionable "for lack of the strict deadlines that are integral to the [] Act." The court denied McCaffrey's request for severance, as "all three pre-litigation provisions are unconscionable."

As to the subsequent purchasers, the court determined McCaffrey could not enforce the Act because it had opted out of it and the contractual procedures are binding on the subsequent purchasers. Finally, with respect to the original purchasers who did not submit declarations, the court exercised its discretion and denied enforcement of the judicial reference provisions under *Tarrant Bell*, *supra*, 51 Cal.4th at p. 541, as there was

_____

[9] Declarations were submitted by Carol Sanchez, Avtar Singh and Renee Phillips. Phillips previously had submitted a declaration and Sanchez had been dismissed from the action.

12.

a "distinct possibility of a multiplicity of actions and a duplication of effort and the danger of inconsistent results, as well as delays in resolution."

McCaffrey petitioned for a writ of mandate or prohibition to overturn the court's order denying its motion to compel compliance with the contractual procedures and judicial reference. McCaffrey contends the provisions in question are not unconscionable. We issued an order to show cause and received additional briefing in order to consider this issue of first impression.

## DISCUSSION

By its motion, McCaffrey sought to compel real parties to engage in a nonadversarial dispute resolution process before being allowed to continue with their lawsuit. The motion involved three categories of plaintiffs, namely: (1) the original purchasers who bought their homes from McCaffrey before January 1, 2003; (2) the original purchasers who bought their homes from McCaffrey on or after January 1, 2003; and (3) the subsequent purchasers who did not buy their homes from McCaffrey. With respect to the original purchasers in the first two categories, McCaffrey sought to enforce its contractual procedures that (1) require the homeowner to provide McCaffrey with notice of the claimed construction defects and an opportunity to inspect and correct them, and (2) if the claim is not resolved, require the parties to participate in non-binding mediation. If the court found those provisions were unenforceable, then McCaffrey sought to enforce the contractual provision that requires judicial reference of real parties' claims. With respect to the subsequent purchasers, McCaffrey argued they were subject to the statutory procedures of the Right to Repair Act, but if they conceded the contractual procedures were applicable to them, then those procedures should be enforced.

The trial court refused to enforce any of the contractual procedures with respect to all of the categories of real parties on the ground the procedures are unconscionable, as the contracts are adhesive and the procedures lack strict deadlines that are integral to the

13.

Right to Repair Act.  By its writ, McCaffrey argues the provisions are not unconscionable and should be enforced as to all real parties.  The resolution of this issue first requires an overview of the Right to Repair Act.

*The Right to Repair Act*

The Legislature enacted the Right to Repair Act to "'specify the rights and requirements of a homeowner to bring an action for construction defects, including applicable standards for home construction, the statute of limitations, the burden of proof, the damages recoverable, a detailed prelitigation procedure, and the obligations of the homeowner.' (Legis. Counsel's Dig., Sen. Bill No. 800 (2001-2002 Reg. Sess.).)" (*Anders v. Superior Court* (2011) 192 Cal.App.4th 579, 585 (*Anders*).)  The Legislature declared that "prompt and fair resolution of construction defect claims is in the interest of consumers, homeowners, and the builders of homes . . . [but] under current procedures and standards, homeowners and builders alike are not afforded the opportunity for quick and fair resolution of claims.  Both need clear standards and mechanisms for the prompt resolution of claims." (Stats. 2006, Reg. Sess. 2001-2002, ch. 722, § 1 (Sen. Bill No. 800, 2 West's Cal. Session Laws 2002, pp. 3399-3400.)  The Legislature further declared it intended the Act to "improve the procedures for the administration of civil justice, including standards and procedures for early disposition of construction defects." (*Ibid.*)

The Act contains five chapters.  Chapter 1 lists definitions applicable to the Act. (§ 895.)  Chapter 2 sets out building standards which, if violated, constitute a deficiency in construction for which the builder may be held liable to the homeowner.  (§§ 896, 897.)  Chapter 3 imposes an obligation on the builder to furnish a minimum one year express written limited warranty covering the fit and finish of specified building components (§ 900), but allows the builder to offer a greater or longer warranty through an "enhanced protection agreement." (§§ 901-906.)  Chapter 3 also imposes an obligation on the homeowner to follow all reasonable maintenance obligations and schedules. (§ 907.)  Chapter 5 sets out the procedure for claims brought under the Act,

14.

including the applicable statute of limitations (§ 941), the burden of proof (§ 942), the exclusiveness of the Act (§ 943), the damages that may be recovered (§ 944), and the affirmative defenses that may be asserted (§ 945.5). It also provides that the Act's "provisions, standards, rights and obligations . . . are binding upon all original purchasers and their successors in interest." (§ 945.)

The chapter at issue here, Chapter 4, prescribes nonadversarial prelitigation procedures a homeowner must initiate before bringing a civil action against the builder for alleged construction defects. (§§ 910-938.) The homeowner is required to provide the builder with written notice of the claim that the construction of his or her residence violated any of the standards set forth in Chapter 2, and must "describe the claim in reasonable detail sufficient to determine the nature and location, to the extent known, of the claimed violation." (§ 910, subd. (a).) Once the builder has received the claim, it has 14 days to provide written acknowledgment of the claim and another 14 days to inspect and test the claimed defects. (§§ 913, 916.) The builder has an additional 40 days to conduct a second inspection or testing. (§ 916.)

Within 30 days of the last inspection or testing, the builder may offer to repair the violation, set a reasonable completion date, and compensate the homeowner for all recoverable damages. (§ 917.) The homeowner has 30 days to either authorize repairs as proposed or request repairs by a different contractor. (§ 918.) The repairs must be commenced within 14 days of acceptance, done "with the utmost diligence," and "completed as soon as reasonably possible," with every effort made to complete them within 120 days. (§ 921.)

The builder's offer to repair must be accompanied by an offer to mediate the dispute if the homeowner chooses; the mediation is limited to four hours, except as otherwise mutually agreed, before a nonaffiliated mediator selected and paid for by the builder, and must occur within 15 days after the request to mediate is received. (§ 919.) The mediator may be selected jointly if the homeowner agrees to split the mediator's

cost.  (§ 919.)  If the builder offered to repair a violation and the mediation fails to resolve the dispute, the homeowner must allow the repair to be performed.  (§ 919.)  When the repair is completed, the homeowner may file an action for violation of the applicable standard or a claim of inadequate repair.  (§ 926.)  If the builder has completed a repair and no previous mediation was conducted, a mediation must be held before the homeowner may file suit against the builder.  (§ 928.)

The time periods and requirements of Chapter 4 are to be strictly construed and, unless extended by the parties' mutual agreement, govern the rights and obligations under the Act.  (§ 930.)  If the builder fails to acknowledge receipt of the claim, elects to not go through the process set forth in Chapter 4, fails to request an inspection within the time specified, fails to make an offer to repair, fails to complete the repair within the time specified, or fails to "strictly comply with this chapter within the times specified," the homeowner is released from the requirements of Chapter 4 and may proceed with the filing of an action.  (§§ 915, 920, 925, 930.)  The standards set forth in the other chapters of the Act, however, continue to apply to the action.  (§§ 915, 920, 925, 930.)

The builder has the option of contracting for an alternative nonadversarial prelitigation procedure in lieu of the statutory procedure.  Section 914 provides:  "(a) This chapter establishes a nonadversarial procedure, including the remedies available under this chapter which, if the procedure does not resolve the dispute between the parties, may result in a subsequent action to enforce the other chapters of this title.  A builder may attempt to commence nonadversarial contractual provisions other than the nonadversarial procedures and remedies set forth in this chapter, but may not, in addition to its own nonadversarial contractual provisions, require adherence to the nonadversarial procedures and remedies set forth in this chapter, regardless of whether the builder's own alternative nonadversarial contractual provisions are successful in resolving the dispute or ultimately deemed enforceable.

"At the time the sales agreement is executed, the builder shall notify the homeowner whether the builder intends to engage in the nonadversarial procedure of this section or attempt to enforce alternative nonadversarial contractual provisions. If the builder elects to use alternative nonadversarial contractual provisions in lieu of this chapter, the election is binding, regardless of whether the builder's alternative nonadversarial contractual provisions are successful in resolving the ultimate dispute or are ultimately deemed enforceable.

"(b) Nothing in this title is intended to affect existing statutory or decisional law pertaining to the applicability, viability, or enforceability of alternative dispute resolution methods, alternative remedies, or contractual arbitration, judicial reference, or similar procedure requiring a binding resolution to enforce the other chapters of this title or any other disputes between homeowners and builders. Nothing in this title is intended to affect the applicability, viability, or enforceability, if any, of contractual arbitration or judicial reference after a nonadversarial procedure or provision has been completed."

This court has addressed issues involving contractual nonadversarial prelitigation procedures builders have adopted in lieu of the Act's statutory procedures in *Anders*, *supra*, 192 Cal.App.4th 579, and *Baeza*, *supra*, 201 Cal.App.4th 1214. In *Anders*, the trial court found the builder's contractual procedures unconscionable and unenforceable, but nevertheless ordered the homeowners who sued the builder due to construction defects to comply with the statutory procedures. (*Anders*, *supra*, 192 Cal.App.4th at p. 587.) We held that the trial court erred in ordering compliance with Chapter 4, as section 914, subdivision (a) provides that a builder who elects or attempts to use its own prelitigation procedures in lieu of the statutory ones is bound by that decision and cannot enforce the statutory procedures. (*Anders*, *supra*, 192 Cal.App.4th at p. 589.)

In so holding, we explained that "a builder who elects to use alternative prelitigation procedures in lieu of those set out in the statute has the right to attempt repairs, so long as it does so pursuant to procedures that are fair and enforceable. If,

17.

however, the builder imposes procedures that are found to be unenforceable, it forfeits its absolute right to attempt repairs. It may still offer to repair any defects, but the homeowner is not bound to accept the offer or to permit the builder to attempt the repairs prior to litigation. The builder thus has an incentive to ensure its alternative procedures are proper and enforceable, and the homeowner's protection against unnecessary delay is preserved." (*Anders*, *supra*, 192 Cal.App.4th at p. 591.)[10] The issue of whether the trial court correctly found the builder's contractual procedures unconscionable and unenforceable was not before us. (*Id.* at p. 584.)

In *Baeza*, *supra*, 201 Cal.App.4th 1214, the trial court ordered homeowners who had sued the builder for construction defects to comply with the builder's contractual procedure and judicial reference provisions. (*Id.* at p. 1220.) In a writ petition, the homeowners argued they were not required to comply with the contractual provisions because the builder failed to comply with the statutory disclosure requirements contained in section 912 of Chapter 4. (*Baeza*, *supra*, 201 Cal.App.4th at pp. 1220, 1224.) We rejected this argument, holding that "a builder who opts out of the Chapter 4 nonadversarial statutory prelitigation procedures in favor of its own contractual procedures opts out of the entirety of Chapter 4, and the disclosure provisions of section 912 do not apply to such a builder." (*Baeza*, *supra*, 201 Cal.App.4th at pp. 1225-1226.) We did not address the propriety of the trial court's order requiring compliance with the

---

**10** We also noted that the legislative history of the Act, particularly a Senate Judiciary Committee analysis of Senate Bill No. 800, showed that "one of the major purposes of the legislation is to promote prelitigation repairs of construction defects in order to avoid the costs of litigation and the resulting increased costs of construction." (*Anders, supra,* 192 Cal.App.4th at p. 590; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001-2002 Reg. Sess.) as amended Aug. 28, 2002, pp. 4, 5.) We further noted the "provisions establishing a time table for the repairs also protect homeowners by preventing inordinate delay in their pursuit of a remedy." (*Anders, supra,* 192 Cal.App.4th at p. 590.) As in *Anders*, we grant real parties' request for judicial notice of the Senate Judiciary Analysis. (*Anders, supra,* 192 Cal.App.4th at p. 590, fn. 3.)

18.

contractual provisions for mediation, arbitration and judicial reference, as the homeowners failed to present a separate argument on the issue. (*Id.* at p. 1231, fn. 7.)

Neither case addressed the issue presented here, namely what constitutes enforceable contractual provisions. The trial court found the contractual provisions unconscionable. Real parties assert that we need not decide whether McCaffrey's contractual provisions are unconscionable because they are "unlawful" under the Right to Repair Act, as they provide "no meaningful timetable" for the builder to act. Real parties contend the absence of deadlines comparable to those in the Act renders the contractual provisions unenforceable, without regard to whether the provisions are unconscionable.

But as we explained in *Baeza*, if a builder opts out of the statutory procedures in favor of its own contractual procedures, the builder opts out of all of Chapter 4. (*Baeza*, *supra*, 201 Cal.App.4th at pp. 1225-1226.) There is nothing in the Act that requires the builder who elects to use contractual procedures to provide a particular procedure or to comply with the deadlines contained in Chapter 4. Instead, section 914, subdivision (a) simply provides that "[a] builder may attempt to commence nonadversarial contractual provisions *other than* the nonadversarial procedures and remedies set forth in this chapter . . .". (Emphasis added.) The statute does not impose any requirement for the contents of those nonadversarial contractual provisions.

If the Legislature had intended to require a builder's contractual provisions to include certain deadlines, it could have stated so within section 914. It also could have made the deadlines of Chapter 4 applicable to a builder's contractual provisions by setting the deadlines as a minimum standard and allowing the builder to offer more generous terms. That the Legislature knew how to do that is demonstrated in Chapter 3, where under section 900 builders are required to provide a minimum one-year express written limited warranty, but under section 901 they may "offer greater protection or protection for longer time periods" in their contracts with the homeowner. The

19.

Legislature did not do so. Instead, it included all of the deadlines in Chapter 4, then authorized builders to opt out of Chapter 4.

Since McCaffrey's contractual provisions are not rendered unenforceable merely because they deviate from the statutory procedure, we consider the only other argument on enforceability that real parties make, namely whether the contractual provisions are unenforceable because they are unconscionable.

*Unconscionability and the Standard of Review*

"Unconscionability is ultimately a question of law for the court." (*Flores v. Transamerica HomeFirst, Inc*. (2001) 93 Cal.App.4th 846, 851, citing § 1670.5.) However, numerous factual issues may bear on that question**.** [Citation.] Where the trial court's determination of unconscionability is based upon the trial court's resolution of conflicts in the evidence**,** or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence**.**" (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89 (*Gutierrez*).) If there are no material conflicts in the evidence bearing on the issue of unconscionability, our review is de novo. (*Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1250.)

Section 1670.5 "'provides a statutory basis for refusing to enforce a contract which the court finds "as a matter of law . . . to have been unconscionable at the time it was made. . . . "'" (*Trend Homes, Inc. v. Superior Court* (2005) 131 Cal.App.4th 950, 956, (*Trend Homes*), disapproved on another point in *Tarrant Bell*, *supra*, 51 Cal.4th at p. 545, fn. 5.) Our Supreme Court has summarized the law of unconscionability as follows: "Unconscionability consists of both procedural and substantive elements. The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citations.] A contract term

20.

is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience."'" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*); see also *Little v. Auto Stiegler, Inc*. (2003) 29 Cal.4th 1064, 1071 (*Little*) [procedural unconscionability "generally takes the form of a contract of adhesion"]; *Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal.4th 83, 113-114 (*Armendariz*).)

"Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on '"a sliding scale."' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" (*Pinnacle*, *supra*, 55 Cal.4th at p. 247, citing *Armendariz*, *supra*, 24 Cal.4th at p. 114.) The party who prepared and submitted the contract has the burden of showing the other party had notice of the contract terms at issue, while the party asserting unconscionability has the burden of establishing it. (*Trend Homes*, *supra*, 131 Cal.App.4th at p. 956.)

We begin with the enforceability of the contractual procedures with respect to the original purchasers who bought their homes on or after January 1, 2003. These procedures appear in the original purchasers' standardized sale agreements and home warranties, as well as the CC&Rs. Real parties contend these provisions are substantively unconscionable because they do not comport with the Right to Repair Act and are procedurally unconscionable because they are contained in contracts of adhesion that were presented to them on a take-it-or-leave-it basis.

*Procedural Unconscionability*

In the present case, the trial court found procedural unconscionability had been established because the sale agreements are contracts of adhesion, and while the contractual procedures are "clear, easily understandable and separately initialed[,]" the

21.

contracts were presented to the original purchasers on a take-it-or-leave-it basis. McCaffrey challenges this finding, arguing the declarations real parties submitted are insufficient to satisfy their burden of proof, the original purchasers initialed the contractual provisions, and McCaffrey submitted undisputed evidence the declarants had an opportunity to negotiate and never did so.

As we have stated, procedural unconscionability requires either *oppression* or *surprise*. "'"Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form."'" (*Pinnacle*, *supra*, 55 Cal.4th at p. 247.) Procedural unconscionability, and in particular "'oppression,'" generally entails a *contract of adhesion*; that is, "'a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" (*Armendariz*, *supra*, 24 Cal.4th at p. 113; see also *Walnut Producers of California v. Diamond Foods, Inc.* (2010) 187 Cal.App.4th 634, 645-646.) "'[S]urprise'" typically involves a provision "'"hidden"'" within the prolixity of a preprinted form contract drafted by the party having superior bargaining strength. (*Baker v. Osborne Development Co.* (2008) 159 Cal.App.4th 884, 895; *A & M Produce v. FMC Corp.* (1982) 135 Cal.App.3d 473, 486; *Armendariz*, *supra*, at p. 114.)

Real parties do not contend that procedural unconscionability exists based on surprise or even misrepresentation; instead, they contend it exists because the sale agreements are contracts of adhesion. We need not decide this issue because, even if we assume real parties have shown an imbalance of bargaining power, that McCaffrey prepared the contracts as the stronger party to its own advantage, and McCaffrey would not have stricken the prelitigation provisions if real parties had asked, real parties have shown only a low level of procedural unconscionability, as the elements of surprise or misrepresentation are not present. (See *Trend Homes*, *supra*, 131 Cal.App.4th at p. 960.)

Accordingly, in order to prevail, real parties must establish a high level of substantive unconscionability. (*Ibid.*)

*Substantive Unconscionability*

Even if the provisions are procedurally unconscionable, they are not substantively unconscionable. The substantive element of unconscionability "pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." (*Pinnacle*, *supra*, 55 Cal.4th at p. 246.) This includes consideration of the extent to which the disputed term is outside the reasonable expectation of the nondrafting party or is unduly oppressive. (*Gutierrez*, *supra*, 114 Cal.App.4th at p. 88.) "Substantively unconscionable terms may take various forms, but may generally be described as *unfairly one-sided*." (*Little*, *supra*, 29 Cal.4th at p. 1071, italics added.) Unconscionability is measured as of the time the contract was entered. (§ 1670.5, subd. (a).)

McCaffrey's contractual procedure begins with the homeowner providing notice of the claim of construction defects. After McCaffrey receives the claim, the parties are required to meet and confer within a reasonable time, not to exceed 60 days. At that meeting, the homeowner is to provide McCaffrey with access to the property for the purpose of inspection. If McCaffrey decides to take corrective action, then the homeowner must provide McCaffrey full access to the property so it can do so. If the claim is not resolved, then the claim must be submitted to mediation according to the procedures adopted by "JAMS" or another entity offering mediation services. The mediation is to be held "as soon as practicable." Within 10 days of the selection of the mediator, or within a time frame set by the mediator, the parties are to submit brief memoranda on their positions. The mediation is to begin at most 10 days later, and must conclude within 15 days of its start. The parties bear their own mediation expenses with the exception of the mediation administrative fee and costs and the mediator's fee and costs, which are shared equally unless the parties agree otherwise.

Real parties contend these contractual provisions are substantively unconscionable because (1) they state no meaningful timeline within which McCaffrey must act, thereby giving McCaffrey a license to delay, (2) the homeowner is required to pay half the cost of the mediation, (3) the notice provision disadvantages homeowners, and (4) the provisions take away other rights enumerated in Chapter 4 that are not included in the contractual procedures.

The purpose of Chapter 4 of the Act "is to give a builder the opportunity to resolve a homeowner's construction defect claim in an expeditious and nonadversarial manner." (*Darling v. Superior Court* (2012) 211 Cal.App.4th 69, 82.)  As this court explained in *Anders,* "one of the major purposes of the legislation is to promote prelitigation repairs of construction defects in order to avoid the costs of litigation and the resulting increased costs of construction.  The provision establishing a time table for the repairs also protects homeowners by preventing inordinate delay in their pursuit of a remedy." (*Anders*, *supra*, 192 Cal.App.4th at p. 590.)

The contractual provisions at issue here set out a procedure that gives McCaffrey the right to repair any claimed construction defects and requires mediation should the homeowner remain dissatisfied.  While the provisions do not contain express timelines like those in the Right to Repair Act, they are not without any time frames whatsoever.  McCaffrey has 60 days to inspect the property, and after that may decide to take corrective action.  The mediation must be held as soon as practicable and once the parties select a mediator, briefs must be filed within 10 days, and the mediation must begin within 10 days thereafter and conclude within 15 days.  Although the provisions do not contain set deadlines within which McCaffrey must decide to take corrective action or complete repairs, a reasonable time to perform may be implied.  As McCaffrey points out, it is a well established principle of contract law that "[i]f no time is specified for the performance of an act required to be performed, a reasonable time is allowed." (§ 1657; *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 30

24.

(*Wagner*).) Courts have applied section 1657 to contractual alternative dispute resolution procedures (*Wagner*, *supra*, 41 Cal.4th at p. 30; *Sawday v. Vista Irrigation District* (1966) 64 Cal.2d 833, 836), and to a real estate option contract (*Patel v. Liebermensch* (2008) 45 Cal.4th 344, 351-352). Since a reasonable time to perform is imputed in the contract, the absence of express timelines does not render the contractual procedures unfair or overly harsh.

Real parties disagree, arguing the absence of express deadlines for McCaffrey to act renders the procedures unfair, as a homeowner would not know precisely when to file suit should McCaffrey either delay in acting or fail to act, and the homeowner necessarily would have to litigate the issue of reasonableness once a lawsuit is filed. It is true that "'[w]hat constitutes a reasonable time is a question of fact,'" which depends on "'the situation of the parties, the nature of the transaction and the facts of the particular case.'" (*Wagner*, *supra*, 41 Cal.4th at p. 30.) But real parties have not shown that, in the context of construction defect claims, it is difficult to know when a builder has decided not to repair the claimed defect, has agreed to repair it but failed to initiate the repair, or did not complete the repair. Either the builder responds to demands for action or it does not. If it does not respond, the homeowner may be reasonably assured that he or she is relieved of any further requirement to engage in a prelitigation resolution process.

Notably, when filing a lawsuit without completing the Right to Repair Act's prelitigation procedures, it is the homeowner's burden to "factually establish" that he or she has been released from those procedures due to the builder's failure to comply with them. (*Standard Pacific Corp. v. Superior Court* (2009) 176 Cal.App.4th 828, 834.) The burden under McCaffrey's contractual provisions is no different; a homeowner may establish excuse from the contractual procedures by showing that McCaffrey unreasonably delayed in making an offer to repair, initiating the repairs, or completing the repairs, and thus proceed with the lawsuit. Determining whether that delay was reasonable or unreasonable would not place a significant burden on the homeowner.

Real parties assert the absence of express deadlines in McCaffrey's procedure is a "license to delay." But implied in this contract, as in all contracts, is the covenant of good faith and fair dealing, which prevents one contracting party from unfairly frustrating the other party's right to receive the agreement's benefits. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 349; *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga* (2009) 175 Cal.App.4th 1306, 1332.) The "'precise nature and extent of the duty imposed . . . will depend on the contractual purposes.'" (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1393.) The covenant of good faith is particularly applicable in situations where one party has discretionary power affecting the other party's rights; "[s]uch power must be exercised in good faith." (*Carma Developers, Inc. v. Marathon Development, Inc.* (1992) 2 Cal.4th 342, 372; *Peak-Las Positas Partners v. Bollag* (2009) 172 Cal.App.4th 101, 106.)

Thus, McCaffrey is required to act in good faith in conducting the inspection, determining whether to repair, and in completing the repairs. If it fails to do so, it exposes itself to additional liability for breach of the covenant of good faith and fair dealing. For this reason, McCaffrey has an incentive to cooperate with the homeowner in the repair process, and to promptly exert its contractual rights and carry out its contractual responsibilities.

Real parties contend the Legislature enacted the "highly detailed process" of Chapter 4 because it wanted the process to begin and end without court supervision before a lawsuit is filed. While that may be true, the Legislature allowed builders to opt out of that process and adopt their own prelitigation procedures. In doing so, the Legislature did not place any restrictions on what those procedures must include. Real parties question why the Legislature would adopt such detailed procedures only to allow the builder to circumvent them by creating stripped down procedures of which homebuyers are seldom aware. There is no clear answer to that question other than to say it did not do so.

26.

Significantly, a homebuyer is given notice of the contractual procedures before entering into a home purchase contract, as those procedures do not become part of the bargain unless they are set out in the contractual documents and the buyer agrees to them. (*Baeza*, *supra*, 201 Cal.App.4th at p. 1227.) Since section 914 requires the contract to reflect the builder's election to follow its own contractual procedures, the buyer has notice of those procedures and the builder's election "because the builder's procedures and the election are part of the contract to which the buyer agrees." (*Baeza*, *supra*, 201 Cal.App.4th at p. 1227.)

Real parties next contend the contractual mediation provision is unconscionable because it requires the homeowner to pay half the cost of the mediation, which could go on as long as the mediator chooses since the mediator has discretion to conduct the mediation as he or she sees fit. For this reason, real parties complain that the mediation fees are likely to be sizeable and therefore would function as a penalty or tax they must pay before being granted access to the court system.

Real parties, however, made no attempt to show that the mediation fees they are likely to pay would be exorbitant or place an unreasonable burden on them, or that a mediation is likely to take an undue amount of time. (*Pinnacle*, *supra*, 55 Cal.4th at p. 247 ["The party resisting arbitration bears the burden of proving unconscionability."]; *Trend Homes*, *supra*, 131 Cal.App.4th at p. 963 [noting it was the homeowners' burden to demonstrate the reference fees they were likely to pay were greater than those that would accrue in litigation before the court].) We recognize that the contractual procedure requires the homeowner to pay half the cost of the mediation, while under the Act the homeowner splits the cost of the mediator only if the homeowner agrees to do so. Courts have concluded, however, that it is not unconscionable for a homebuyer to pay half the costs of judicial reference as provided in a home purchase agreement. (*Greenbriar Homes Communities, Inc. v. Superior Court* (2004) 117 Cal.App.4th 337, 345-346 (*Greenbriar*), disapproved on another point in *Tarrant Bell*, *supra*, 51 Cal.4th at p. 547;

27.

*Woodside Homes of California, Inc. v. Superior Court* (2003) 107 Cal.App.4th 723, 732-733.)  There is no reason why a different result should apply to the mediation clause at issue here.

Real parties argue they are disadvantaged because the notice provision requires the notice of claim to "describe the nature and location of the Claim in reasonable detail." Real parties assert this is a different standard than the Right to Repair Act, which states that the notice "shall describe the claim in reasonable detail sufficient to determine the nature and location, to the extent known, of the claimed violation."  (§ 910, subd. (a).) Real parties reason that instead of being required to state what they know, the contractual provision requires them to "provide an objectively reasonable amount of detail in describing the nature and location of the defects in their home."  Real parties claim the contractual standard is problematic because it is more stringent and invites litigation of the meaning of what is "reasonable."

There is nothing unfair, however, in requiring the homeowner to describe the nature and location of the claim in reasonable detail.  The absence of the term "to the extent known" in the contractual provision does not mean the homeowner must provide anything other than the information about the nature and location of the defect that the homeowner knows.  The notice requirement does not render the contractual procedure unconscionable.

Finally, real parties contend that the contractual procedure is unconscionable because it takes away various rights they would have otherwise under Chapter 4, such as the right to request copies of documents pertaining to the construction (§ 912), the right to be provided with documents pertaining to any repairs made (§ 923), and the prohibition against the builder obtaining a release or waiver in exchange for the repair work mandated by the Act (§ 926).  As real parties point out, we held in *Baeza* that a builder who opts out of the statutory procedure opts out of all of Chapter 4.  (*Baeza*, *supra*, 201 Cal.App.4th at pp. 1225-1226.)  But, as we have already explained,

28.

contractual procedures are not rendered unconscionable merely because they do not include the same requirements as the Act. This is because the Legislature did not mandate that anything within the Act be included in the builder's contractual procedures. By entering into their purchase contracts, real parties agreed to the alternative procedures.

In sum, real parties have not met their burden of establishing that the contractual procedures, as stated in the paragraphs entitled "Claim Notice: Right to Inspect and Correct" and "Nonbinding Mediation," are unconscionable. We therefore find these provisions are enforceable as to the original purchasers who bought their homes on or after January 1, 2003.

Turning to the original purchasers who bought their homes before 2003, we note that real parties do not argue the contractual procedures in the pre-2003 sale agreements and home warranties are unconscionable apart from comparing them to the Right to Repair Act. The Act, however, was not applicable when those homeowners entered into their contracts with McCaffrey. Because unconscionability is measured as of the time the contracts were entered into, the Act cannot be the basis for an unconscionability finding with respect to the pre-2003 home sales. (§ 1670.5, subd. (a).) Since we have concluded the contractual procedures in the sale agreements and home warranties for those homes purchased on or after January 1, 2003 are not substantively unconscionable in light of the Act, we necessarily also find the procedures in the pre-2003 contracts are not substantively unconscionable and therefore are enforceable.

That leaves the subsequent purchasers. As real parties explain, "[t]he court refused to enforce the statutory SB800 prelitigation procedure against the subsequent purchaser plaintiffs, because it is undisputed that for *all* of the SB800 homes at issue in this action, McCaffrey elected at the time of sale to utilize a contractual prelitigation procedure under Civil Code section 914(a)." Real parties assert that the trial court's reasoning on this point, which includes a finding that the contractual procedures in the CC&Rs are binding on the subsequent purchasers, is highly compelling and should be

29.

upheld. Real parties assert the trial court's ruling that the subsequent purchasers do not have to follow the contractual procedures is valid because (1) the contractual procedures violate the Act, and (2) McCaffrey did not ask the court in its moving papers to enforce its contractual procedures as to the subsequent purchasers.

Real parties conceded below, and concede in this proceeding, that the contractual procedures apply to the subsequent purchasers. As we have determined, those procedures are enforceable. While in its moving papers below McCaffrey sought to force the subsequent purchasers to comply with the Right to Repair Act's procedures, it also stated that if the subsequent purchasers contended or conceded they were bound to the contractual procedures, it reserved the right to enforce those terms against them. In their opposition below, real parties conceded the subsequent purchasers were subject to the contractual procedures. Based on this concession, McCaffrey asked the trial court to enforce the contractual procedures against the subsequent purchasers. Having requested the relief below, and as real parties do not assert any other argument with respect to the enforceability of the contractual procedures against the subsequent purchasers, we conclude that the subsequent purchasers must comply with them.

In sum, all of the real parties must comply with the contractual procedures in their contracts with McCaffrey, which include providing notice of the claim, giving McCaffrey an opportunity to repair and correct, and participating in nonbinding mediation. Since we are ordering compliance with the contractual procedures, we do not decide whether the judicial reference clause is enforceable against any of the real parties, as some or all of the real parties may resolve their complaints with McCaffrey.

## DISPOSITION

The petition for writ of mandate is granted. Let a peremptory writ of mandate issue directing the respondent court to (1) vacate its orders of May 31, 2012 and August 27, 2012, denying petitioner's "Motion to Compel ADR," and (2) enter a new order granting the motion and compelling all of the real parties to engage in the contractual

30.

prelitigation procedures included in their contracts with petitioner.  Our stay of the underlying action will be vacated upon finality of this opinion.  The parties shall bear their own costs in these writ proceedings.


_____

Gomes, J.

WE CONCUR:


_____

Cornell, Acting P.J.


_____

Franson, J.